No. 19,313.

ANTONIO CICCARELLI *v.* THE PEOPLE
OF THE STATE OF COLORADO.
(364 P. [2d] 368)

Decided August 14, 1961.

Mr. Ben Klein, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. J. F. Brauer, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

Plaintiff in error, herein referred to as defendant, was charged in the district court of Boulder County with the burglary of the Fred Harsch Lumber Co. of Longmont, Colorado. Following a jury verdict of guilty, the

court sentenced him to a term of not less than two nor more than seven years in the penitentiary. Review of this judgment is here sought.

The information charged that the defendant did " * * * break and enter the office, shop and warehouse of Fred Harsch, with intent then and there to commit therein the crime of larceny."

The evidence, which was for the most part circumstantial, established that there was an attempted burglary at the Draper Drug Store at Loveland, Colorado, on September 29, 1958, at about 11:30 P.M. Paul Draper, the owner of the store, had been working after closing when he heard a noise on the roof. Upon going outside he saw a ladder, which had been used by a construction crew, leaning against the building. Investigation revealed that some of the gravel on the tar and gravel roof had been chipped away. Draper saw a man in the alley whom he later identified as DeGesualdo, who afterwards was arrested riding in defendant's car. Defendant and DeGesualdo had been seen together in Longmont, Colorado, some twelve miles from Loveland, a few hours earlier. They were driving a light colored Jaguar which had Utah license plates. This same vehicle was seen in Loveland by police there at about 11:15 P.M. Investigation on the roof of the Draper Drug Store revealed the presence of two hammers, a chisel and plier in a blue bag.

The Loveland police ordered a pick-up on the car in question and shortly thereafter defendant was apprehended in company with DeGesualdo at Frederick, Colorado. Upon being questioned defendant denied that he had been in Loveland that evening.

The following morning the burglary of the Fred Harsch Lumber Co. of Longmont, Colorado, was discovered. The burglary had been accomplished by means of a hole in the ceiling 18″ by 24″ in diameter. The safe had been broken open and the sum of $203.76 had been taken from it. This consisted primarily of 1 roll of quarters ($10.00), 1 roll of dimes ($5.00), 2 rolls of nickels

($4.00), 1 roll of pennies ($.50), $25.00 in one dollar bills with a blue rubber band around them, and $130.00 in five, ten and twenty dollar bills. Also missing was some hardware having the lumber company's identifying code, a change bag, deposit book and some cigarettes of a particular brand.

The tools which were found on the roof of the Draper Drug Store were shown to be the same tools which had been stolen from the lumber company apparently earlier in the evening. After the Longmont and Loveland police had coordinated information, the defendant was taken to Longmont for questioning. It appeared that his clothing was covered with a type of hair which resembled that which was used as insulation in the ceiling of the lumber company. According to testimony of the Longmont chief of police, corroborated by one of the officers, defendant first denied participation in the lumber company burglary, but later (after consulting an attorney) admitted orally that he had broken in and had taken the tools and money. He admitted that a drill found on the drug store roof was his property. A chuck key found in DeGesualdo's pocket belonged to the drill. Defendant admitted at the trial that he had directed the officers to the place in a search for the missing money bag. In an effort to find it they went to Firestone, but were unable to find it. Investigation of the glove compartment of defendant's car the day after his arrest revealed the presence of five rolls of money corresponding to that which had been taken, together with a blue rubber band and some cigarettes of the brand which had been taken from the lumber company.

At the trial defendant repudiated his former statement to the police and maintained that he had made no such incriminating confession or admission. Testimony on his behalf explained the presence of the coins in the glove compartment as having been given to him by his grandfather. He testified that he had placed the coins in the glove compartment of his automobile.

Instruction No. 5, which was given to the jury over the objection of the defendant, reads as follows:

"You are instructed that exclusive and unexplained possession of property recently stolen raises the presumption that he who is in such possession is guilty of the theft; the burden of explaining such possession is upon the defendant, and his explanation must be sufficient to raise in your mind a reasonable doubt as to his guilt. If you believe from the evidence in this case that the property in question was stolen from the possession of the owner thereof and taken in the commission of a burglary and that recently thereafter the same, or any part thereof, was found in the exclusive possession of the defendant, this in law raises a presumption that the defendant stole such property and committed such burglary."

There was also an instruction given, although not requested, dealing with similar transactions. Defendant also excepted to this instruction. It reads:

"There is some evidence with reference to other transactions than that charged in the information. This evidence is admissible only as bearing on the question of whether or not the defendant had a plan or design to produce a result of which the act charged in the information was a part, and you can consider such evidence for no other purpose. The defendant cannot be tried for or convicted of any offense not charged in the information."

Defendant's first objection to the form of the information was at the conclusion of the people's case. His counsel then pointed out that the information failed to correspond with the wording of the statute.

Numerous alleged errors are argued in defendant's brief as grounds for reversal. Included are the following points:

1. That the information is defective in that it contained the words "office, shop and warehouse" despite

the fact that presently the statute uses the word "building."

2. That it was error to receive various of the exhibits, including the coins, the sample of insulation from the lumber company roof, photographs of the lumber company, tools which were found on the roof of the drug store, and the chuck key which allegedly was part of the drill. It is said that these items were insufficiently identified.

3. That the court erred in failing to treat defendant's oral statements as confessions and as such subject to proof as to voluntariness.

4. That the evidence pertaining to the Draper Drug Store at Loveland, Colorado, is foreign to the transaction in the information and thus not material to those charges.

5. That the court erred in giving the instructions dealing with recent possession of stolen property and similar transactions, which instructions are hereinabove set forth.

I. *Sufficiency of the Information.*

■ Although the information would appear to have been drafted with reference to the old statute, it nevertheless sufficiently describes the offense of burglary. The amendment to C.R.S. '53, 40-3-6 (1957 Supp.), had a curative purpose. It was designed to broaden, not to restrict the scope of the offense. It now declares that any "building, railroad car, or trailer" can be the subject of a burglary. The present information alleges that the defendant did break and enter an office, shop and warehouse. Therefore, the question is whether this language served to describe the Fred Harsch Lumber Company. In answering this question, we note that our decisions hold an information to be sufficient if it advises the defendant of the charges he is facing so that he can adequately defend himself and be protected from further prosecution for the same offense. *Johnson v. People,* 110 Colo. 283, 133 P. (2d) 789; *People v. Warner,* 112 Colo. 565, 151 P. (2d) 975.

■ In *Sarno v. People,* 74 Colo. 528, 223 Pac. 41, it was held that the information need not charge in the exact language of the statute; that the information is sufficient if the charge is in language from which the nature of the offense may be readily understood by the accused and jury.

To the same effect are *Tracy v. People,* 65 Colo. 226, 176 Pac. 280, and *Wright v. People,* 116 Colo. 306, 181 P. (2d) 447.

■ In the case at bar, there is ample evidence establishing that the lumber company structure here involved was a building, and we must also conclude that an office, shop and warehouse describes a building. We are unable, therefore, to perceive that any prejudice arose from this discrepancy in wording. Consequently, this contention is of the trivial technical character which we have on numerous occasions held to be non-prejudicial. *Compton v. People,* 84 Colo. 106, 268 Pac. 577; *Grandbouche v. People,* 104 Colo. 175, 89 P. (2d) 577; *Rogers v. People,* 104 Colo. 594, 94 P. (2d) 453.

II. *Recent Possession of Stolen Goods.*

Defendant offers two arguments in support of his position that Instruction No. 5 requires the cause to be reversed. First he maintains that it places the burden on the defendant to prove his innocence and thus violates the fundamental rule that the burden of proof is always on the people to establish guilt beyond a reasonable doubt. *Van Straaten v. People,* 26 Colo. 184, 56 Pac. 905, and *Russell v. People,* 125 Colo. 290, 242 P. (2d) 610, are relied on. Secondly, he claims that there was a lack of evidence showing that defendant had exclusive possession of property recently stolen.

■ First, we consider defendant's second contention, that when he was arrested he was not in actual possession of the coins or tools. Defendant was shown to have had possession soon after the burglary, and under our decisions this is sufficient to justify the reception of such

evidence. See. *Collins v. People,* 69 Colo. 343, 193 Pac. 634.

The remaining question is whether Instruction No. 5 has the effect of shifting to the defendant the burden of proving his innocence. In the instruction the jury is told that the defendant is required to make an explanation to the jury of his possession, which explanation must be sufficient to raise a reasonable doubt in the minds of the jury. In effect, the defendant's argument is that it is error to impose on the defendant *any* burden of explanation. It is true that the burden of proof cannot be validly shifted to the defendant in a criminal case. This does not mean, however, that the onus of explanation can never be placed upon him. An inference such as that of possession of stolen property recently after the theft, is an aid in proof which calls for rebutting or explanatory evidence. See *Melville, Manual of Criminal Evidence,* pp. 45-47, 2d Ed. (1954), and *Blanda v. People,* 67 Colo. 541, 189 Pac. 249. See also *Lewis v. People,* 115 Colo. 434, 174 P. (2d) 736. *Van Straaten v. People,* supra, clearly recognized the propriety of requiring an explanation. In that case the effect of the instruction was to require the explanation of the accused to establish that his possession was innocent and it was the actual shift in burden of proof thereby effected which was condemned. The court recognized, however, the validity of requiring an explanation creating a reasonable doubt in the minds of the jury when it said:

" * * * The law imposes no such burden upon a defendant in a criminal case. If the possession of the property by plaintiffs in error had been of such a character as, unexplained, would have constituted a criminating circumstance, it would not have devolved upon them to show, even by a preponderance of testimony, that they came by it honestly. If their explanation created a reasonable doubt in the minds of the jury as to that fact, it would be sufficient to rebut the presumption of guilt.

*Boykin v. People,* 22 Colo. 496; *Babcock v. People,* 13 Colo. 515; *Brooke v. People,* 23 Colo. 375."

This distinction was applied in *Russell v. People,* supra, where the instruction required the defendant to "satisfy" the jury that he came into possession of the property honestly. The instruction in that case contained an inconsistent provision whereby it would have been sufficient to raise a reasonable doubt in the jurors' minds "with reference thereto." The Court seemingly did not feel that this inconsistent alternative cured the vice because it said:

" * * * Under this instruction, each defendant would have had the burden to prove his innocence by satisfying the jury that he came into the joint possession honestly. * * * "

In the case at bar, Instruction No. 5 was given after the accused had taken the stand and testified that he had placed the coins in the glove compartment of his car and after his grandfather had testified that he had given these coins to him. Thus the defendant did assume to make an explanation as to part of the stolen property prior to the giving of the instruction. Furthermore, there were incriminating circumstances other than this evidence.

While we do not commend Instruction No. 5 as a model one for use in this type of case, we do not, due to the fact that its consequence is to require an explanation sufficient to raise a sufficient doubt, consider the giving of it prejudicial error. It would have been desirable had the court instructed the jury along the line that the exclusive possession of stolen property recently after a theft or burglary serves to create an inference or incriminating circumstance that the defendant stole such property or burglarized the premises of the owner of such property and that such evidence, if established beyond a reasonable doubt, is sufficient in and of itself to justify a verdict of guilty in the absence of an explanation derived from the evidence in the case or furnished

by the defendant raising a reasonable doubt as to his guilt. The effect of the suggested instruction would have been to require the defendant to bear the onus of making an explanation sufficient to raise a reasonable doubt in the minds of the jury. This essentially is the legal consequence of Instruction No. 5.

We are, therefore, in much the same position as the court was in *Miller v. People,* 92 Colo. 481, 22 P. (2d) 626, wherein it was said:

" * * * The very expression 'recent possession unexplained,' occurring in the rule under consideration, indicates that such recent possession requires some explanation. It is not necessary that the explanation should be satisfactory to the jury; if it raises in their minds a reasonable doubt of the defendant's guilt, it is sufficient to require an acquittal. In other instructions — and all instructions must be taken together — the court made it plain that if the evidence or lack of evidence upon any of the material facts left in the minds of the jury any reasonable doubt of Miller's guilt, it was the jury's duty to return a verdict of not guilty. The explanation offered by Miller was of such a character that the jury might well have considered it incredible, and no doubt they did so consider it. While the instruction in question cannot be regarded as a model, it does not come within the ruling of the Van Stratten case, supra, and giving it was not reversible error."

We hold, as we held in the Miller case, that the giving of Instruction No. 5 was not reversible error.

III. *Admissibility of Defendant's Statement.*

■ The record discloses that defendant failed to suggest involuntariness of the alleged confession. He objected to its admissibility and one of the grounds of his objections was that the court, once it discovered that the statement was a confession, had failed to hold a hearing with reference to its voluntariness. The premise that the court must proceed to determine voluntariness independent of any suggestion thereof from the defendant is

faulty. In *Hammil v. People,* 145 Colo. 577, 361 P. (2d) 117, we held that it was not error for the trial court to receive evidence establishing voluntariness in the first instance even though no issue had been raised. The ruling in the *Hammil* case is not, however, subject to the interpretation that the court must hear such evidence prior to the defendant's suggestion of involuntariness. The procedure for determining voluntariness of a confession is prescribed in *Cahill v. People,* 111 Colo. 29, 137 P. (2d) 673. There the Court noted:

" * * * Counsel for defendant objected to the admission of the confession on the ground that it was involuntary, and requested a preliminary inquiry out of the presence of the jury with respect thereto. * * * "

The trial court, in the *Cahill* case, failed to grant the preliminary hearing, but its action was not held to be error. The dissenting opinion of Mr. Justice Hilliard points out that once the confession is challenged the trial judge is under an obligation to hold a hearing to determine as a mixed question of law and fact whether the confession was voluntarily given. This has been recognized in other cases. See *Roper v. People,* 116 Colo. 493, 179 P. (2d) 232. See also *Buschy v. People,* 73 Colo. 472, 216 Pac. 519, and see *Melville, Manual of Criminal Evidence* 52, 2d Ed. (1954).

In the case at bar there is not the slightest indication that any invalid means were used to obtain the oral confession described by the police officers. In view of this fact, and considering that the defendant failed to challenge the confession on the ground of involuntariness and to demand a hearing, and considering also that defendant denied making any such statement, we are unable to observe any merit in the argument offered.

IV. *Admissibility of Evidence Showing the Attempted Burglary of the Drug Store.*

A variety of reasons are offered to show that the court erred in receiving evidence showing or tending to show an attempt to commit a distinct crime on the night

of the burglary other than that charged in the information. We are of the opinion that this evidence was relevant and properly received. The two offenses were closely connected in time, and so closely interwoven that it was impossible to show the evidence surrounding the burglary charge without also disclosing the facts and circumstances of the attempted burglary of the drug store. The close connection between the burglary and the attempted burglary in the present case is very like the situation shown in *Silliman v. People,* 114 Colo. 130, 162 P. (2d) 793, where the defendant was accused of murdering his wife by administering poison. The evidence disclosed that he give her a drink of brandy which had poison in it. She in turn gave a small sip to her infant daughter. The Court said:

"When we consider the fact that the death of the wife, with the murder of whom the defendant was charged, and that of his daughter, occurred almost simultaneously in a room in defendant's home, it is apparent that the death of the daughter would be referred to inadvertently by one or more witnesses. * * * "

See also *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081.

Defendant also complains of the instruction on similar transactions. The Court, in the Silliman case, commented on this proposition as follows:

" * * * The instruction given was precautionary and proper, and one which tended, so far as human agencies could, to prevent the defendant from being prejudiced by his inhuman treatment of his own child. It was not necessary to emphasize defendant's inhumanity by specifically pointing out in this instruction any other crime of which defendant, by his repeated confessions, was guilty."

*Williams v. People,* 114 Colo. 207, 158 P. (2d) 447, recognizes that evidence showing a similar transaction can be admissible on the theory of *res gestae* and also for the purpose of showing plan, scheme and design to accomplish a result. We think that it was proper to in-

struct the jury on similar transactions under the circumstances here presented.

V. *Admissibility of the Exhibits.*

It is said that the coins were not admissible because of failure to establish them as the exact ones stolen from the lumber company. They were, nevertheless, sufficiently identified and were so closely tied to the burglary charge as to justify their being received. See *Davis v. People,* 137 Colo. 113, 321 P. (2d) 1103. Cf. *Collins. v. People,* supra. *Lombardi v. People,* 124 Colo. 284, 236 P. (2d) 113, is not in point. There the entire case rested upon possession of the stolen goods, hence, strict identification of the property was essential.

The other exhibits were sufficiently identified and were properly admitted.

Other alleged errors are urged, but the points attempted to be made are not meritorious.

The judgment is affirmed.

Mr. Justice Frantz not participating.