The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Oliver Samuel JENSEN,
Defendant–Appellant.

No. 86SA198.

Supreme Court of Colorado,
En Banc.

Dec. 14, 1987.

As Modified on Denial of Rehearing
Jan. 25, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Patricia Hummons Clark, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lee Jay Belstock, Denver, for defendant-appellant.

VOLLACK, Justice.

The appellant, Oliver Samuel Jensen, (Jensen or the defendant), was convicted by a jury of one count of sexual assault on a child. He appeals from his conviction, asserting error in certain evidentiary rulings and in a jury instruction. He also challenges the constitutionality of the controlling statute.[1] We reject the appellant's allegations of reversible error and affirm his conviction.

### I.

In December 1984, the police department received a telephone tip that a nine-year-old girl, B.T., had been sexually assaulted by the defendant, who was eighty-two years old at the time. Acting on the telephone tip, a police officer contacted B.T.'s mother, who then spoke with B.T. and B.T.'s brother and sister. The three children confirmed the sexual assault allegation.

The next day, the investigating officer contacted Jensen at his home and explained to him that he was suspected of sexual assault on a child. After being advised of his *Miranda* rights, Jensen agreed to talk with the officer. They first talked, at the defendant's request, with the officer's tape recorder turned off. Jensen then voluntarily gave a taped statement. When asked to give a written statement, the defendant declined and said that he wished to stop the interview. The investigating officer left, and neither the taped statement nor the officer's supplementary report was admitted into evidence at trial.

The defendant was arrested two days later and an information was filed in Kit Carson County District Court charging him with two counts of sexual assault on a child, a class 4 felony, in violation of sec-

---

1. Because the defendant is challenging the constitutionality of a statute, direct appeal is appropriate pursuant to section 13-4-102(1)(b), 6A C.R.S. (1987). .

tion 18–3–405, 8B C.R.S. (1986).[2] Each count alleged a different victim. The police interviewed and took written statements from B.T. and from her brother and sister.

The children told the police that B.T., her sister C.T., and another nine-year-old girl, T.M., were playing by the garage and in a tree on the defendant's property. The girls stated that they climbed out of the tree on the defendant's property and, when asked by him why they were leaving, responded that B.T. needed to go to the bathroom. According to the testimony at trial, the defendant then grabbed B.T. and T.M. and attempted to push them into a shed on his property, telling them they should go to the bathroom in the shed. C.T. was standing nearby, and she testified that she tried to grab B.T. and T.M. T.M. broke free from the defendant's grip, but B.T. did not. The defendant then put his hand inside B.T.'s underwear, saying "there was a lot he wanted to see, and wanted to see them naked," according to the hearsay testimony of B.T.'s brother. B.T. broke free at this point and all three girls ran across the street to T.M.'s home, where they found their brothers, and told them what had happened. In response to their brothers' skepticism, the girls said they would return to the defendant's property and attempt to verify what had happened if the brothers would hide at the back of the defendant's garage. The children did this, and the boys testified at trial about the exchange they heard between the three girls and the defendant.[3] The defendant called witnesses who testified as to his reputation for truthfulness in the community.

The jury convicted the defendant of one count of sexual assault as to the victim B.T., and acquitted him of the second sexual assault charge as to T.M. He was sentenced to probation for two years.

## II.

### A.

The defendant's first argument is that the admission of certain expert testimony constituted reversible error. One of the prosecution witnesses was Michael Sandifer, who qualified as a psychology expert because he had specialized training in child psychology and in the interviewing of children. Sandifer had interviewed B.T. prior to trial, and testified at trial that she "was a very anxious little girl" who would not respond to his questions during his hour-long interview with her. He testified that she was afraid to talk, had suffered problems in school for several years, and that he believed B.T. needed counseling. Although she did not respond to Sandifer during the interview, B.T. did testify at trial. When Sandifer was asked about the fact that B.T. had testified, he responded: "I would think that would take a lot of courage on this little lady's part to do that."

---

2. **18–3–405. Sexual assault on a child.** (1) Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim. 8B C.R.S. (1986).

3. After the district attorney was permitted to refresh the recollection of B.T.'s brother with a copy of his statement to the police, he testified as follows:

> A Well, first they asked him why he did what he did. And then they—well, they said, "we had to go to the bathroom." And then they said something about going over to [T.M.'s]—which it's hard to remember. And then he said, "Well, we have stuff that you—you have stuff that we like to see."

The third girl who was present at the time of the incident, C.T., testified as follows:

> A [C.T.] ... [T]hey went in there. Then when they tried to come back out Mr. Jensen stuck his hand down their pants.
> Q [district attorney] Okay. Did he stick his hand down [T.M.'s] pants?
> A Yes.
> Q Did he stick his hand down [B.T.'s] pants?
> A Yes.
> Q Did you see both of this [sic]?
> A Yes.
> Q Did he have his hands anywhere else on them?
> A No.

The defendant contends that this statement by Sandifer should not have been allowed over objection because it amounted to opinion testimony bolstering the veracity of a specific person's version of an incident. The prosecution's response is that the statement was properly admitted because the purpose of Sandifer's testimony was to explain B.T.'s emotional problems, which in turn explained her demeanor on the witness stand.

 Absent an abuse of discretion, a trial court's ruling regarding the scope of expert testimony will not be disturbed. The general rule is that an expert witness cannot give opinion testimony as to a specific instance of truthfulness. *Tevlin v. People*, 715 P.2d 338, 340 (Colo.1986); *see* CRE 608(a). In *Tevlin*, the social worker's opinion testimony should not have been allowed to the extent that he "testified that he believed the victim was telling the truth." 715 P.2d at 340. However, to justify reversal on appeal, the defendant must meet a two-part test: was the opinion testimony erroneously admitted into evidence, and if so, did the error substantially influence the verdict or affect the fairness of the trial proceedings. *Id.* at 342.

 The testimony at issue here was not an opinion by the expert as to the witness' truthfulness. Instead, it was a remark on his observation that it took "a lot of courage" for the victim to testify. This testimony did not relate to "the witness' truthfulness on a specific occasion." *People v. Oliver*, 745 P.2d 222, 225 (Colo.1987). The rule is that "neither a lay nor expert witness may give opinion testimony with respect to *whether a witness is telling the truth on a specific occasion.*" *People v. Koon*, 713 P.2d 410, 412 (Colo.App.1985) (emphasis added). The remark here was not an opinion as to whether the witness was telling the truth, so its admission was not erroneous.

 A conviction will not be reversed because of an erroneous evidentiary ruling if the error is harmless. *Tevlin*, 715 P.2d

at 341. Even if this remark were erroneously admitted, the defendant has not established that the error substantially influenced the verdict or affected the fairness of the proceedings. *Id.* at 342. Upon a review of the record in its entirety, we do not see any evidence that reversible error resulted. Accordingly, we hold that the admission of this testimony was harmless error.

### B.

The defendant's next assertion, raised for the first time in his Motion for New Trial, is that the trial court erred in permitting the prosecution to cross-examine him about a statement he made to the investigating police officer before his arrest. He contends that because the trial court did not inquire as to the voluntariness of the statement, the prosecution's cross-examination was impermissible. Investigating Officer Eccles contacted the defendant at his home before he was arrested. Initially, the defendant agreed to talk with Officer Eccles as long as Eccles' tape recorder was turned off. After talking while the recorder was off, the defendant made a taped statement in which he related his version of the incident. The defendant then declined to give a written statement to Officer Eccles, and terminated the interview. Officer Eccles' report indicated that he had advised the defendant of his *Miranda* rights. Neither the officer's report nor the taped interview was entered into evidence at trial. The defendant was not taken into custody until one or two days after he talked with Eccles.

At trial, defense counsel was the first to make reference to the defendant's statement to Officer Eccles. The following exchange took place on direct examination:

Q [defense counsel] But do you remember a statement to Officer Eccles?

A [defendant] Yeah.

Q What did you say to him? What did you tell him?

A I told him—

MR. COHEN: Objection. This is hearsay. I think he can testify as to what happened.

THE COURT: Are you impeaching his statement? What are you doing?

MR. BRINKLEY [defense counsel]: I'm just asking him if he remembers what he said to Officer Eccles when he was being interviewed.

MR. COHEN: I don't understand his inquiry.

THE COURT: I think it's hearsay at this point, if I understand where you're going.

Q (By Mr. Brinkley) Do you remember what you said to the girls?

The defendant's response was: "I guess I told them [the girls] I wouldn't mind seeing them naked."

The defendant's statement to Officer Eccles was raised again by the prosecution on cross-examination:

Q [prosecutor] Okay. Do you remember making a statement to Officer Eccles, the next day I think you say? You remember him coming over to your house?

A [the defendant] Yeah.

Q Do you remember talking to him?

A Yeah.

Q Did you ever in that statement mention anything about [T.M.] hitting you?

A No.

Q Okay. And you recall him asking you at any time "did you touch either one of the girls"? And do you recall what you said?

A No.

Q Do you recall saying: "Okay. Just to run my hand across there, you know, how their clothes come apart, you know, I just rubbed it across there, that skin.

Well, hell, I have done that a lot of times with my granddaughters and everything." Do [you] recall saying that?

A Yeah. But I didn't do that.

Q You didn't rub your hand across their stomaches [sic]?

A No.

Q That's what you told Officer Eccles, did you?

A No. I know but—that guy [Eccles] is crazy anyway. Why talk to him?

Q Okay. Then later on you said: "You know, where their clothes come together there's bare skin, I just run my hand across there like you ..." "Okay. You're motioning toward the stomach area." "Yeah." And you said, "Yeah." And Eccles said: "Okay. And there was bare skin?" "Yeah." And Eccles said: "Between there." And then you said, "You know, how when they raise their hands up, you know ..."

So do you recall any conversation like that?

A No. That Eccles made that up himself. You know, he's a great guy to make stuff up himself.

MR. BRINKLEY: Your Honor, I would ask the witness to just answer the question.[4]

During jury deliberations, the jury sent a note to the judge which stated: "We ask if a copy of the original police report taken from Mr. Oliver Jensen by Officer Eccles of Flagler was signed by the defendant, report of December 7, 1984." The judge responded with an instruction to the jury to "use your best recollection of the evidence."

 Confessions, admissions and statements of a defendant are not admissible in evidence for any purpose unless they

---

**4.** The remainder of the testimony about the defendant's statement to Officer Eccles is not relevant to our analysis:

Q Do you recall Eccles saying, "Do boys play over here quite a bit," and you said, "no"? And then you said, No, I didn't let them play on account of, you know, they would have shoes on. When you said they couldn't play on the roofs they just stopped coming over. Is that your testimony?

A You mean the boys?

Q Right.

A Well, they come over there once in awhile, but then they didn't get on the roof.

are voluntarily made. *People in the Interest of M.R.J.*, 633 P.2d 474 (Colo.1981). A court must look at the combined events and the totality of the circumstances, including the conduct and characteristics of the defendant, in determining whether a statement made, after the *Miranda* warning has been given, is voluntary. *People v. Scott*, 198 Colo. 371, 600 P.2d 68 (1979); *People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978).

In *Ciccarelli v. People*, 147 Colo. 413, 364 P.2d 368 (1961), this court addressed similar facts and held that when a defendant failed to challenge his confession's voluntariness and failed to demand a hearing on the issue, and further denied even making the statement, the trial court's failure to hold a hearing on the voluntariness issue was not improper. In *Ciccarelli*, the defendant failed to raise the involuntariness of his "alleged confession." 147 Colo. at 422, 364 P.2d at 373. On appeal, one of the defendant's grounds for objection was the trial court's failure to hold a hearing on the issue of voluntariness. We noted:

In the case at bar *there is not the slightest indication that any invalid means were used* to obtain the oral confession described.... In view of this fact, and considering that the defendant failed to challenge the confession on the ground of involuntariness and to demand a hearing, and considering also that defendant denied making any such statement, we are unable to observe any merit in the argument offered.

*Id.* at 423, 364 P.2d at 373 (emphasis added).

In the case at bar, no contemporaneous objection was made by defense counsel when the defendant's statement to Officer Eccles was raised on cross-examination. In fact, defense counsel had already asked the defendant to tell the jury what he said to Officer Eccles. The first time the defendant complained about the prosecution's reference to this statement was in his Motion for New Trial, when he argued that the trial court had not met its responsibility to inquire into the voluntariness of his statement. In ruling on the Motion for New Trial, the judge entered lengthy findings regarding the voluntariness issue.[5]

The general rule is that a trial court's factual findings on the voluntari-

---

5. The trial court held:

The Court is aware of its own file and the file indicates, as I recall, that the defendant was, before he was questioned by the officer, given a full set of *Miranda* warnings. I believe the questioning occurred in his home, if I remember right. Be that as it may, it appears that the procedural safeguards were followed. We did not have a hearing on that I realize. But at least from the Court's file, which is all the Court has to go on, it appeared that when the defendant got tired talking to the officer he told him to get out of his house. And at least if I am looking at the same statement everybody else is that seems to be what's in the file. Maybe I had better look at it again. I may be wrong, but it seems to me that was my recollection.

He was told of the fact that the officer was investigating a sexual assault on a child and he was suspected, was given *Miranda* warnings. Yes. At the conclusion of discussing that, the report given to the Court in support of the issuance or in support of filing of the Information in this case, related that when the officer asked for a written statement he was told by Mr. Jensen that "he was not going to give a written statement and he wanted—he meaning Mr. Jensen—wanted me to stop talking and he wanted to stop talking at that time." And, of course, the statement was not one of implication, but rather of exoneration, denial. I don't think that makes a particular difference whether a *Jackson–Denno* [voluntariness] hearing is required, whether it is inculpatory or exculpatory. But I think the issue is whether there really is a valid concern about voluntariness. And at least from what I see in the file or saw in the file when I reviewed it, Mr. Jensen's own behavior on the stand, and the lack of objection directed to the voluntary issue, I don't feel that it is required or incumbent upon the Court, again, *sua sponte* to adjourn the matter, adjourn the case pending a finding of voluntariness. It seems to me the evidence, at least as the Court had it from the testimony being given by Mr. Jensen, both prior to and after this particular point in the trial plus the information in the Court's file itself, indicated that there really wasn't a situation of involuntariness for the Court to be concerned about. And the Court, for better of [sic] for worse, proceeded on that basis because it felt there just simply wasn't that issue and it wasn't raised for the Court to concern itself with.

ness of a confession will be upheld if there is adequate evidence in the record to support the findings. *Parks*, 195 Colo. at 349, 579 P.2d at 79. Because of the absence of a contemporaneous objection or request for a ruling *in limine*, the standard of review is whether this testimony constituted "[p]lain error or defects affecting substantial rights." Crim.P. 52(b), 7B C.R.S. (1984). To rise to the level of plain error, an appellate court must be able to say with fair assurance that the error "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987). The facts and circumstances of this case lead us to conclude that the two references to the defendant's statement to Officer Eccles, by both the defense and the prosecution, did not undermine the fundamental fairness of the verdict.

At the outset, we note that defense counsel was first to open the door to testimony about this statement, during direct examination of the defendant. It is unclear from the record whether the trial court sustained the prosecution's objection,[6] or whether defense counsel instead elected to abandon that line of questioning. Second, defense counsel did not object when the prosecution raised this issue on cross-examination. Third, defense counsel had the opportunity to explore the statement further on redirect examination, but did not. Fourth, a review of the record reveals, as in *Ciccarelli*, "not the slightest indication" to the trial court that any aspect of this statement was less than voluntary. For these rea-sons, we conclude that admission of this testimony does not constitute plain error.

## C.

The defendant's next evidentiary argument is that there was insufficient evidence to establish his guilt beyond a reasonable doubt. In the alternative, he contends that if the evidence is sufficient, then the definitional portion of the statute is unconstitutional.

The defendant contends that there was insufficient evidence to establish that the touching was "for the purposes of sexual arousal, gratification, or abuse." § 18-3-401(4), 8B C.R.S. (1986). Where the sufficiency of evidence to support a guilty verdict is challenged, an appellate court must review the testimony in the light most favorable to the prosecution. If there is sufficient competent evidence to establish the essential elements of a crime, a guilty verdict will not be overturned by an appellate court, even though there are conflicts and inconsistencies in the evidence. *People v. Jones*, 191 Colo. 110, 112, 551 P.2d 706, 707 (1976).

Viewing the evidence in a light most favorable to the prosecution, we note that two children, as well as the victim, witnessed the assault and testified as to the incident.[7] There was additional testimony from the two brothers regarding statements made to them by their sisters,[8] and the brothers' own observations when they returned with their sisters to the defendant's property. There was damaging testimony by the defendant when he took the

---

6. At the hearing on the defendant's Motion for New Trial, the court addressed the voluntariness issue which had been raised for the first time. The court stated: "In this case the objection voiced was one, as I recall, of hearsay, *which the court overruled.*" (Emphasis added). The language of the transcript is unclear.

7. C.T. testified that she saw the defendant "stick his hand down" the pants of the two alleged victims. T.M. testified that "he grabbed [B.T.] and stuck his hand down her pants." B.T. testified that "he grabbed me again and he put his hand down my pants."

8. The prosecution filed a Motion to Admit Hearsay Testimony, seeking to admit the brothers' testimony about the statements made to them by their sisters "within minutes" after the assault occurred. The motion specifically referred to the brothers' testimony as to the defendant's statement: "You have something underneath that I wanted to see." This motion was granted as to the testimony of the two brothers. The granting of this motion has not been raised as an issue on appeal.

stand on his own behalf.[9]

■■■ The record reveals sufficient evidence to support the jury's verdict of guilty on one of the two counts, regardless of inconsistencies in the testimony. The essential elements of the crime were established, when viewed in a light most favorable to the prosecution. The jury's resolution of the conflicting evidence is not subject to reversal on appeal, as long as there was sufficient evidence to establish the elements of the crime. We reject the defendant's contention as to the insufficiency of the evidence.

We also reject the defendant's alternative argument that the definitional statute, section 18–3–401, 8B C.R.S. (1986), is unconstitutional. We upheld the constitutionality of this statute in *People v. West*, 724 P.2d 623 (Colo.1986), and in *People in the Interest of J.A.*, 733 P.2d 1197 (Colo.1987). The defendant has not made a showing that the statute is unconstitutional as applied to him. Accordingly, the defendant's argument is without merit.

### D.

#### 1.

The defendant's final claim of error is that the trial court used an erroneous jury instruction, and that use of the erroneous instruction was plain error, necessitating reversal of his conviction. First, we must determine whether the jury instruction was erroneous. If so, the second step is to determine whether use of the instruction in this case constitutes plain error, calling for reversal of the defendant's conviction.

The instruction, which was given to the jury without objection by the defendant states as follows:

**INSTRUCTION NO. 15**

Concerning the charge of Sexual Assault on a Child in this case certain words or phrases have a particular meaning.

The following are the definitions of these words and phrases:

*"Sexual Contact"* means the knowingly touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowingly touching of the clothing covering the immediate area of the victim's or actor's intimate parts *if that sexual contact can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse.*

"Intimate Parts" means the external genitalia or the perineum or the anus or the pubes of any person or the breast of a female person.

(Emphasis added).

The propriety of jury instructions under sections 18–3–401 and 18–3–405 was raised in *People v. West*, 724 P.2d 623 (Colo.1986), and in *People in the Interest of B.D.S.*, 739 P.2d 902 (Colo.App.1987). In *West*, the defendant appealed his conviction of sexual assault on a child under this statute. He argued that the statutory language, "can reasonably be construed," is unconstitutionally vague, resulting in a denial of his due process rights. 724 P.2d at 625. We rejected this argument, holding that the statutory definition of sexual contact, on its face, was not unconstitutionally vague.

In Part C of *West*, we addressed the language of the jury instruction. The disputed instruction in *West* did not contain the "can reasonably be construed" language of the statute. Instead, the instruction "explicitly informed the jury that the element of 'sexual contact' required not

---

**9.** One example is his statement on direct examination: "I guess I told them [the three girls] I wouldn't mind seeing them naked." In addition, on direct examination the defendant's attorney asked if his client had ever been convicted of a felony. This exchange followed:

A [defendant] No. This is my first time and I'm 83 years old.

Q [defense counsel] You haven't been convicted of this.

A I'm—I was 82 when I got caught, I guess.

Q You haven't been convicted of this one though.

only that there be an intentional touching ... but also that the sexual contact *'was for the purpose of sexual arousal, gratification, or abuse.'* " *Id.* at 629 (emphasis added). Further, the jury was "explicitly informed" that it must be convinced beyond a reasonable doubt that " 'such touching was done *for the purpose of* sexual arousal, gratification, or abuse.' " *Id.* (emphasis added). We concluded in *West* that "the statutory proscription was not applied in an unconstitutional manner against the defendant during the trial of this case." 724 P.2d at 629. Thus, in *West* the language of the jury instruction saved the definitional statute from being applied in an unconstitutional manner.

The court of appeals applied *West* in *People in the Interest of B.D.S.*, 739 P.2d 902 (Colo.App.1987). The jury instruction in *B.D.S.* was different from the instruction in *West* because it used the language "can reasonably be construed," directly out of section 18–3–401(4), the definitional statute. The instruction in *B.D.S.* did not include the preferred phrase "for the purpose of" that was used in *West.* The court of appeals held that this instruction was erroneous, stating that "the instructions used in this case fell short of reconciling unequivocally the 'can reasonably be construed' language of § 18–3–401(4) with the [defendant's] due process rights." 739 P.2d at 904.

However, the court concluded that the flawed instruction was harmless error. In upholding the adjudication order entered against *B.D.S.*, the court held:

> [A]ny error presented by the instruction was harmless because, based on the evidence, *the jury could not reasonably have construed the conduct of B.D.S. as being for any purpose other than that of sexual gratification, arousal, or abuse.*

*Id.* at 904 (emphasis added).[10] The court went on to conclude that the testimony, which included the victim's description of the incident and corroboration by an eyewitness, was sufficient to establish the offense charged beyond a reasonable doubt. *Id.*

In *West,* we noted similar cases in two other jurisdictions in which the appellate courts addressed the same issue: *State v. Tibbetts,* 281 N.W.2d 499 (Minn.1979), and *State v. Nye,* 105 Wis.2d 63, 312 N.W.2d 826 (1981). In *Tibbetts,* the defendant appealed from his sexual assault conviction, claiming that a jury instruction was unconstitutional. The jury had been instructed with the statutory language "can reasonably be construed." This phrase of the statute and instruction is identical to the instruction in the case at bar and in *B.D.S.* The Minnesota Supreme Court held:

> By instructing the jury that "the touching could reasonably be construed as being for the purpose of satisfying the defendant's sexual impulses" the degree of proof was shifted from acts which *must* be proved beyond a reasonable

---

**10.** The other relevant instructions given to the jury in this case are as follows:

**INSTRUCTION NO. 13**

The elements of the crime of sexual assault on a child are:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
 a. subjected another not his or her spouse,
 b. to any sexual contact, and
4. that person was less than fifteen years of age, and
5. the defendant was at least four years older than that person,
6. at the time of the commission of the act.

After considering all the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you should find the defendant guilty of sexual assault on a child.

After considering all the evidence, if you decide the prosecution has failed to prove each of the elements beyond a reasonable doubt, you should find the defendant not guilty of sexual assault on a child.

**INSTRUCTION NO. 4**

The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged.

doubt to acts which *could* reasonably be construed .or interpreted to be for an improper purpose.

281 N.W.2d at 500 (emphasis in original). On this basis, the court reversed and remanded for "a new trial in which the jury is to be instructed that the state has the burden of proving beyond a reasonable doubt that defendant's acts were *for the purpose of* satisfying his sexual or aggressive impulses without including the offensive language to which we have referred." *Id.* at 501 (emphasis added).

In *State v. Nye,* the Wisconsin Supreme Court upheld a ruling by the court of appeals that a jury instruction containing the "can reasonably be construed" language, while erroneous, "amounted to harmless error because the jury, from the evidence presented, could not have reasonably construed defendant's conduct as being undertaken for any purpose other than sexual gratification or arousal." 105 Wis.2d at 64, 312 N.W.2d at 826.

■■■ Based on the holdings in *West* and *B.D.S.,* and the analysis applied in other jurisdictions, we conclude that the jury instruction here is erroneous because it fails to reconcile the language of the statute with the defendant's due process rights. In order to ensure that the statute is applied in a constitutional manner, a jury should be instructed in the manner already approved by this court in *West.*[11]

2.

Having concluded that the jury instruction was erroneous, the question remains whether the jury instruction rises to the level of plain error. Because the flawed jury instruction deprived the defendant of due process, the use of this instruction is a constitutional violation. "A constitutional error is harmless only when the case against a defendant is so overwhelming that the constitutional violation was harmless beyond a reasonable doubt." *People v. Myrick,* 638 P.2d 34 (Colo.1981). The issue for our determination is whether the case against this defendant is "so overwhelming" as to satisfy this court, beyond a reasonable doubt, the erroneous jury instruction "did not contribute to the defendant's conviction." *People v. Campbell,* 187 Colo. 354, 358, 531 P.2d 381 (1975).

While this doctrine should be sparingly applied, we have specifically used this standard in evaluating the error resulting from constitutionally flawed jury instructions. In *Key v. People,* 715 P.2d 319 (Colo.1986), we held that a jury instruction was constitutionally deficient in its definition of the mental state that was an element of the charge. After reviewing the jury instructions as a whole, we reviewed the record and found that "the evidence on the issue of deliberation was overwhelming." *Id.* at 323. On that basis, we concluded that use of the flawed jury instruction "was harmless beyond a reasonable doubt." *Id.* at 324. *But see Evans v. People,* 706 P.2d 795 (Colo.1985) (Because flawed jury instruction created "a very real likelihood that the jury rejected the entrapment defense on legally insufficient grounds," the instruction was not harmless beyond a reasonable doubt and reversal was appropriate. *Id.* at 801.) *See generally Graham v. People,* 705 P.2d 505 (Colo.1985) (The prosecution's knowing use of false testimony is a constitutional violation, but held to be harmless beyond a reasonable doubt, based on the facts of the case. *Id.* at 509); *People v. Ortega,* 672 P.2d 215 (Colo.App.1983) (Testimony was erroneously permitted in violation of CRE 702 and 704, but admission "was harmless beyond a reasonable doubt" because evidence of the defendant's guilt was overwhelming. *Id.* at 218.).

In this case, five children testified at trial. C.T., who was eight years old at the time of trial, testified that she saw the

---

11. In *West,* we approved of the instruction which "explicitly informed [the jury] that a guilty verdict could be returned only if the jury was convinced 'beyond a reasonable doubt that there was both an intentional touching and *such touching was done for the purpose of* sexual arousal, gratification, or abuse.'" 724 P.2d at 629 (emphasis added).

defendant "stick his hand down" the pants of T.M. and B.T. T.M., then age nine, testified that the defendant "grabbed [B.T.] and stuck his hand down her pants." B.T. testified that "he grabbed me again and he put his hand down my pants." The defendant chose to testify, describing to the jury his own version of the incident and often contradicting his own testimony.[12] The other defense witnesses were friends and neighbors who testified as to the defendant's reputation for truthfulness in the community.

 While the testimony conflicts in some respects, a review of the record leads us to the conclusion that use of this flawed jury instruction was harmless error. The evidence consisted of eyewitness testimony from the victim and two witnesses, in addition to corroborating testimony by the brothers. The defendant elected to testify on his own behalf, and made certain incriminating statements to the jury. Under the evidence presented in this case, once the jury was satisfied beyond a reasonable doubt that a touching occurred, it could not have had a reasonable doubt that the defendant accomplished that touching for any purpose other than sexual arousal, gratification or abuse. We do not believe that use of the preferred jury instruction would have caused the jury to arrive at a different result. *See B.D.S.*, 739 P.2d 902 (Colo. App.1987) (Evidence which consisted of the "victim's description of the incident [which] was corroborated by an eyewitness" held to support conviction of sexual assault "beyond a reasonable doubt," despite the constitutionally flawed jury instruction. *Id.* at 904–05). From these facts, we conclude that use of this jury instruction, while erroneous, was harmless beyond a reasonable doubt.

The defendant's conviction is affirmed.

---

**12.** The defendant's testimony was inconsistent in certain respects. For example, he testified at one point that he said to the girls: "I wouldn't mind seeing them naked." He also testified that he and the victim engaged in a struggle over the saw with which he was working, and that he "kind of pushed on [B.T.'s] stomach.... Just kind of pushed on her a little, you know." He stated that he had no other physical contact with B.T.