The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Joel Saunders WEST,
Defendant-Appellant.

No. 84SA210.

Supreme Court of Colorado,
En Banc.

Aug. 25, 1986.

Rehearing Denied Sept. 15, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nathan Coats, John Daniel Dailey, Eric Perryman, Asst. Attys. Gen., Denver, for plaintiff-appellee.

William F. Reynard, Gerald E. Piper, Denver, for defendant-appellant.

QUINN, Chief Justice.

The defendant, Joel Saunders West, appeals his conviction for sexual assault on a child. He claims that the statutory definition of "sexual contact" in section 18–3–401(4), 8 C.R.S. (1978), which definition is an essential component of the crime of

sexual assault on a child, is unconstitutionally vague in violation of due process of law.[1] In addition to his constitutional challenge, West also contends that the district court erred in denying his challenge for cause to a prospective juror and that the evidence was insufficient to support the jury verdict. We are unpersuaded by his claims, and we accordingly affirm the judgment.

## I.

An information was filed alleging that the defendant on July 27, 1982, in Garfield County, Colorado, committed the crime of sexual assault on a child by knowingly subjecting a boy less than fifteen years old to "sexual contact" and that the defendant at this time was at least four years older than the boy. Prior to trial the defendant unsuccessfully moved to dismiss the charge, claiming that the statutory definition of "sexual contact" was unconstitutionally vague in violation of the Due Process Clauses of the United States and Colorado Constitutions. U.S. Const. amend. XIV; Colo. Const. art. II, sec. 25. The district court denied the defendant's motion to dismiss.

Trial to a jury commenced on April 20, 1983. During jury selection a prospective juror, Ms. Seubert, acknowledged that she was a former aunt by marriage to one of the prosecution witnesses, Jennifer Sherman, who was an eyewitness to the offense charged. The juror stated that twenty years earlier she had been married to the brother of the father of Jennifer Sherman, but that, having since remarried, she had not seen Jennifer very much throughout the years and had little contact with her family. In response to a question by defense counsel, Ms. Seubert stated that she believed Jennifer was a truthful person. She went on to state, however, that if she felt Jennifer was wrong in her testimony, she would be able to reject her testimony. Defense counsel, without specifying the legal basis for the challenge, asked that the

juror "be excused for cause." The trial court denied the challenge, noting that the juror during voir dire communicated "a genuine desire to evaluate this witness' testimony as she would any other witness' [testimony]." The defendant chose not to exercise any of his five peremptory challenges against Ms. Seubert, and she served on the case.

The evidence at trial established the following sequence of events with respect to the charge. On July 27, 1982, Jennifer Sherman, a lifeguard at the Hot Springs Athletic Club pool in Glenwood Springs, observed the defendant, a middle-aged man, swimming and playing with a ten year old boy in the pool. Sherman paid particular attention to the defendant because a week earlier another pool patron reported that she had seen the defendant swimming with another boy and had overheard the defendant asking for the other boy's telephone number. Suspecting that the defendant might be engaging in inappropriate conduct with the boy in the pool, Sherman reported what she had observed to the pool manager, David Giocomo.

Sherman, Giocomo, Richard Screen, who was the athletic club manager, and another pool employee then took up positions around the pool in order to watch the defendant more closely. Giocomo and Screen testified that over the next twenty minutes they observed the defendant and the boy swimming and playing together in the pool and engaging in a great deal of physical contact. They testified that they saw the defendant place one hand on the boy's buttocks and the other over the boy's genital area for about five seconds each time and that these touchings appeared to be deliberate. Jennifer Sherman testified that she was able to watch the defendant and the boy only intermittently because of her life guard duties, but that in her estimate the contact lasted for a considerably longer period of time than five seconds. After the second touching was observed, Giocomo asked the defendant to leave the pool and

---

**1.** Because the defendant has challenged the constitutionality of a statute, jurisdiction over this appeal properly lies in this court. §§ 13–4–102(1)(b) and 13–4–110, 6 C.R.S. (1973).

accompany him to his office, where the police were summoned.

The boy testified that he met the defendant at the pool on the day in question and that he and the defendant were swimming and playing together in the water. The boy stated that on two occasions the defendant put him on his knee, turned him around, and touched him on the penis. On one of these occasions the boy, thinking that the touching might be on purpose, put up his knees and the defendant stopped touching him in that area.

The defendant testified that he had been at the pool for several minutes and was swimming laps with a snorkel, a swimming mask, and flippers when he encountered the ten year old boy at the shallow end of the pool. The defendant started talking and joking with the boy, and they then swam together for a few minutes. The defendant admitted that he picked the boy up to waist level several times and threw him in the water and also swam with the boy on his back. Although acknowledging that there was a great deal of physical contact between them, the defendant denied intentionally touching the boy in the genital area or on the buttocks. He stated that any touching of those parts of the boy's body, if it did occur, was accidental and not for a sexual purpose.

At the conclusion of the evidence the trial court instructed the jury that, for purposes of the crime of sexual assault on a child, "sexual contact" means "the intentional touching of the victim's intimate parts by the actor, or the intentional touching of the clothing covering the immediate area of the victim's intimate parts, if that sexual contact was for the purpose of sexual arousal, gratification, or abuse." The term "intimate parts" was defined for the jury as the "external genitalia or the perineum or the anus or the pubes of any person." *See* § 18–3–401(2), 8 C.R.S. (1978). In the course of instructing the jury that the issues in dispute were whether the defendant intentionally touched the victim's genitals or the clothing covering the immediate area of the genitals and whether the purpose of any such touching was for sexual arousal, gratification, or abuse, the court further elaborated as follows:

> It is Defendant's position that he did not touch [the victim's] genitals, or the clothing covering that immediate area, and if there was a touching it was not intentionally done for the purpose of sexual arousal, gratification, or abuse, rather it was accidental.

> In order to find the Defendant guilty you must be convinced beyond a reasonable doubt that there was both an intentional touching and such touching was done for the purpose of sexual arousal, gratification or abuse.

The jury returned a guilty verdict to the charge. By post-trial motion the defendant requested the court to set aside the verdict and to enter a judgment of acquittal on the basis that the statutory definition of "sexual contact" was unconstitutionally vague in violation of due process of law. The district court denied the motion and sentenced the defendant to a probationary term of four years. This appeal followed.

## II.

We first consider whether section 18–3–401(4), 8 C.R.S. (1978), which defines "sexual contact" in terms of whether that contact "can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse," is unconstitutionally vague in violation of due process of law. According to the defendant's argument, the term "can reasonably be construed" extends to all conduct which might possibly be for sexual purposes and thereby fails to provide adequate notice of the proscribed conduct and reasonably objective standards of enforcement. Before addressing the merits of the defendant's argument, we briefly review certain well-settled principles that guide our resolution of this issue.

## A.

Two basic interests underlie the void-for-vagueness doctrine.

First, the interest in fair notice requires the law to be sufficiently definite to alert the populace to the nature of the proscribed conduct so that they may control their actions accordingly. Second, the interest in even-handed treatment requires that the law provide specific standards for those charged with its enforcement so that arbitrary and discriminatory application will be avoided.

*People ex rel. City of Arvada v. Nissen,* 650 P.2d 547, 550 (1982). When legislation is challenged as void for vagueness, the essential inquiry is whether the statute forbids the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application. *E.g., Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *People v. Randall,* 711 P.2d 689 (Colo.1985); *People in Interest of C.M.,* 630 P.2d 593 (Colo.1981). While due process of law requires that a statute provide adequate notice of the prohibited conduct and practicable guidelines for even-handed enforcement and application, it does not mandate that a statute be drafted with mathematical exactitude. *E.g., People v. Alexander,* 663 P.2d 1024, 1027 (Colo.1983); *Colorado Auto and Truck Wreckers v. Department of Revenue,* 618 P.2d 646, 651 (Colo.1980). So long as a statute permits persons of ordinary intelligence to distinguish between permissible and illegal conduct and provides workable standards for those responsible for the enforcement and application of the law, due process of law will be satisfied. *E.g., Randall,* 711 P.2d 689; *People v. Pharr,* 696 P.2d 235 (Colo.1984); *People v. Moore,* 674 P.2d 354 (Colo.1984); *People v. Castro,* 657 P.2d 932 (Colo.1983).

Long-standing rules of statutory construction provide the analytical framework for resolving a void-for-vagueness challenge. A statute is vested with a presumption of constitutionality, with the burden being on the party challenging the statute to establish its unconstitutionality beyond a reasonable doubt. *E.g., Randall,* 711 P.2d

689; *Alexander,* 663 P.2d 1024; *Clark v. People,* 176 Colo. 48, 488 P.2d 1097 (1971). Because it is an overriding principle of constitutional law that in a criminal trial the prosecution bears the burden of proving each essential element of a crime beyond a reasonable doubt, *e.g., In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968), it also must be presumed in the first instance that the legislature intended to conform to this constitutional standard. § 2–4–201(1)(a), 1B C.R.S. (1980); *see People v. Smith,* 620 P.2d 232 (Colo.1982). The legislature itself has expressly recognized the reasonable doubt standard of proof as a basic right implicit in due process of law. §§ 18–1–401 and –402, 8 C.R.S. (1978).

It must also be borne in mind that if a challenged statute lends itself to alternative constructions, at least one of which comports with constitutional standards, the constitutional construction must be adopted. *E.g., United States v. Vuitch,* 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); *People v. Moyer,* 670 P.2d 785 (Colo.1983); *People ex rel. City of Arvada,* 650 P.2d 547. Courts should also strive to interpret a statute in harmony with other potentially conflicting enactments so that, to the extent practicable, the entire statutory scheme can be given effect. § 2–4–201(1)(b), 1B C.R.S. (1980); *see, e.g., People in the Interest of D.L.E.,* 645 P.2d 271 (Colo.1982). Other interpretative rules, as pertinent here, include the statutory presumptions that a just and reasonable result is intended, § 2–4–201(1)(c), 1B C.R.S. (1980), as is a result feasible of execution, § 2–4–201(1)(d), 1B C.R.S. (1980).

It is in light of these principles that the defendant's constitutional challenge to the statutory definition of "sexual contact" in section 18–3–401(4), 8 C.R.S. (1978), must be evaluated.

### B.

Sexual assault on a child is defined in section 18–3–405(1), 8 C.R.S. (1978), as

knowingly subjecting another not the offender's spouse to any sexual contact if the victim is less than fifteen years of age and the offender is at least four years older than the victim. This offense is a class 4 felony unless it involves the use of force, intimidation, or threat against the victim or unless the actor occupies a position of trust with respect to the victim, in which case the crime is elevated to a class 3 felony. § 18–3–405(2), 8 C.R.S. (1985 Supp.). Section 18–3–401(4), 8 C.R.S. (1978), defines "sexual contact" as

the intentional touching of the victim's intimate parts by the actor, or the actor's intimate parts by the victim, or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact *can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse.*

(emphasis added).[2]

The defendant's void-for-vagueness challenge to the statutory definition of "sexual contact" proceeds from the premise that the words "can reasonably be construed" result in the imposition of criminal liability for sexual assault on a child on the basis of a mere reasonable possibility that the sexual contact was done for the purpose of sexual arousal, gratification, or abuse. We reject the defendant's premise and conclude that the statutory definition of "sexual contact" can be construed in a manner consistent with the constitutional interests encompassed in the void-for-vagueness doctrine.

We agree that a statute which imposes criminal liability on a level of proof amounting to no more than a reasonable possibility cannot be squared with due process of law. Such a statute would directly clash with the constitutional requirement that the prosecution bear the burden of proving the guilt of an accused beyond a reasonable doubt, *Winship*, 397 U.S. 358, 90 S.Ct. 1068; *People ex rel. Juhan*, 165 Colo. 253, 439 P.2d 741, and would affront those interests of adequate notice and even-handed standards of enforcement that underlie the void-for-vagueness doctrine. It is necessary, therefore, to examine whether the term "can reasonably be construed" necessarily connotes a standard of reasonable possibility only and is thus incapable of an alternative construction that comports with due process of law.

The word "can" is an auxiliary verb. While it might in some context be used to express a contingency that might be possible, its primary meaning is to have permission to, to have a right to, or to be enabled by law. *Black's Law Dictionary* 186 (5th ed. 1979); *see also Webster's Third New International Dictionary*, p. 323 (1981). The word "construe" means to analyze, to explain the sense or intention of, or to put a construction on. *Webster's Third New International Dictionary*, p. 489 (1981). When we read the "can reasonably be construed" language in section 18–3–401(4) in light of the constitutionally mandated reasonable doubt standard of proof, *see* §§ 18–1–401 and –402, 8 C.R.S. (1978), we are satisfied that the challenged language represents a legislative effort to qualify the "intentional touching" element of "sexual contact" with the requirement that the touching occur under circumstances that will permit a fact finder to conclude beyond

**2.** Because the conditional clause in section 18–3–401(4), 8 C.R.S. (1978)—"if that sexual contact can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse"—is not set off by a comma, it might be argued that the clause refers only to the touching of the clothing covering the immediate area of the victim's (or actor's) intimate parts. Such a construction obviously was not intended by the legislature, however, since there can well be an intentional touching of intimate parts for legitimate purposes. Moreover, the rule of the last antecedent—that relative and qualifying phrases are construed to refer only to the last antecedent with which they are closely connected—has been rejected by the legislature and does not therefore create any presumption of statutory intent. § 2–4–214, 1B C.R.S. (1985 Supp.). In our view, the conditional clause is meant to apply to all forms of sexual contact defined by section 18–3–401(4)—that is, the touching of the victim's intimate parts by the actor, the touching of the actor's intimate parts by the victim, or the touching of the clothing covering the immediate area of the victim's or actor's intimate parts.

a reasonable doubt that it was done for the purpose of sexual arousal, gratification, or abuse. In effect, the legislature, although admittedly employing a somewhat awkward choice of words, defined "sexual contact" in terms of the purpose or object sought to be achieved by the actor in engaging in the prohibited conduct, thereby rendering "sexual contact" a specific intent type of criminal conduct.[3]

We therefore construe the term "sexual contact" in section 18-3-401(4), 8 C.R.S. (1978), to mean the intentional touching of the victim's intimate parts by the actor (or the actor's intimate parts by the victim) or the intentional touching of the clothing covering the immediate area of the victim's (or the actor's) intimate parts for the purpose of sexual arousal, gratification, or abuse.[4] This statutory interpretation harmonizes the "can reasonably be construed" language with those basic interests underlying the void-for-vagueness doctrine and achieves a just and reasonable result feasible of execution. *See State v. Bicknese*, 285 N.W.2d 684 (Minn.1979) (statute defining sexual contact as certain nonconsensual touchings "if the acts can reasonably be construed as being for the purpose of satisfying the actor's sexual or aggressive impulses" should not be struck down as facially void but rather construed in a manner consistent with the reasonable doubt standard and supplemented by ade-

3. We acknowledge that in several cases we have held that the legislature, consistent with due process of law, may employ a standard of objective reasonableness with respect to the conduct element of a crime, *see, e.g., People v. Randall*, 711 P.2d 689 (Colo.1985), (statutory definition of indecent exposure in terms of "likely to cause affront or alarm to the other person" sets forth "a readily identifiable objective standard for measuring the conduct proscribed by its terms"); *People v. Smith*, 638 P.2d 1 (1980) (statutory language describing nonconsensual sexual penetration as "by any means of sufficient consequence reasonably calculated to cause submission against the victim's will" provides adequately discernible standards of conduct), as well as the knowledge element of an offense, *see, e.g., People v. Prante*, 177 Colo. 243, 493 P.2d 1083 (1972) (statutory element of assault on a peace officer that offender knew or reasonably should have known that the person assaulted was a peace officer engaged in the performance of his duties not unconstitutionally vague), so long as the prosecution bears the burden of proving that particular element beyond a reasonable doubt. In the case of "sexual contact," however, the legislature saw fit to employ the "can reasonably be construed" language in the context of the purpose which the actor sought to accomplish by his conduct. If the legislature intended to define "sexual contact" in terms of an objective standard of reasonableness as measured by the acceptable forms of physical contact in our society, it could have done so, and we may reasonably presume it would have done so, without regard to the subjective purpose of the actor's contact. That it chose not to do so is quite obvious from the text of the statute itself.

4. The statutory definition of "intentionally" in section 18-1-501(5), 8 C.R.S. (1978), lends further support to our construction of the defini-

tion of "sexual contact" as requiring purposeful conduct. That section states that all offenses in which the mental culpability element is expressed as "intentionally" are specific intent offenses and further states that a person acts "'intentionally' ... when his conscious objective is to cause the specific result proscribed by the statute defining the offense".

We note that in 1983 section 18-3-401(4), 8 C.R.S. (1978), was amended so that the culpable mental state of "knowingly" was substituted for "intentionally" in the definition of "sexual contact." Ch. 198, sec. 1, § 18-3-401(4), 1983 Colo. Sess.Laws 697; § 18-3-401(4), 8 C.R.S. (1985 Supp.). Section 18-1-501(6), 8 C.R.S. (1978), states that all offenses in which the mental culpability requirement is expressed as "knowingly" are general intent offenses and defines "knowingly" as follows:

A person acts "knowingly" ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

Because the 1983 amendment to section 18-3-401(4), 8 C.R.S. (1985 Supp.), retains the purposeful element of "sexual contact," it would appear that the effect of the amendment is to define the "conduct" aspect of "sexual contact" in terms of an awareness of the nature of the conduct in question—that is, that the actor is touching the victim's intimate parts or the victim is touching the actor's intimate parts—but still to retain the purposeful aspect of that conduct—that is, that the touching be done for the purpose of sexual arousal, gratification, or abuse. In short, we discern no basis in the 1983 amendment to construe the term "can reasonably be construed" in a manner different from the construction adopted in this opinion.

quate instructions to the jury); *cf. People v. Duenaz*, 148 Mich.App. 60, 384 N.W.2d 79 (1985) (statutory definition of sexual contact employing qualifying phrase "if touching can reasonably be construed as being for the purpose of sexual arousal or gratification" not unconstitutionally vague).[5]

### C.

In this case the trial court's instruction on "sexual contact" did not contain the "can reasonably be construed" language of section 18–3–401(4), 8 C.R.S. (1978), but rather explicitly informed the jury that the element of "sexual contact" required not only that there be an intentional touching of the clothing covering the immediate area of the victim's intimate parts but also that the sexual contact "was for the purpose of sexual arousal, gratification, or abuse." The jury was also explicitly informed that a guilty verdict could be returned only if the jury was convinced "beyond a reasonable doubt that there was both an intentional touching and such touching was done for the purpose of sexual arousal, gratification, or abuse." These instructions unequivocally reconciled the "can reasonably be construed" language of section 18–3–401(4) with the defendant's due process right to require the prosecution to prove every essential element of the charge beyond a reasonable doubt.

■ We thus conclude that the statutory definition of "sexual contact" in section 18–3–401(4) is not unconstitutionally vague and that the statutory proscription was not applied in an unconstitutional manner against the defendant during the trial of this case.

### III.

■ We next consider the defendant's claim that the trial court abused its discretion in denying the defendant's causal challenge to the juror, Ms. Seubert, who was formerly an aunt by marriage to Jennifer Sherman, one of the eyewitnesses to the crime in question. We find no error in the trial court's ruling on this matter.

Section 16–10–103(1), 8 C.R.S. (1978), and Crim.P. 24(b) contain the various grounds on which a juror may be challenged for cause. In this case defense counsel merely asked that Ms. Seubert "be excused for

---

5. We are not unmindful that in *State v. Tibbets*, 281 N.W.2d 499 (Minn.1979), the Minnesota Supreme Court reversed a conviction for criminal sexual conduct on the basis of a jury instruction which, in accordance with a Minnesota statutory definition of that term, stated

> [i]f you are satisfied beyond a reasonable doubt that on or between Friday, the 13th of February, and Sunday, the 14th of March, 1976, ... first, that the defendant intentionally touched [the victim's] buttocks, or the clothing covering the immediate area of his buttocks, and secondly, that the touching could reasonably be construed as being for the purpose of satisfying the defendant's sexual impulses, ... then you should find him guilty of the crime charged....

The court held that the jury instruction, as given, violated due process of law because the use of the phrase "could reasonably be construed" shifted the degree of proof "from acts which *must* be proved beyond a reasonable doubt to acts which *could* reasonably be construed or interpreted to be for an improper purpose." 281 P.2d at 500 (emphasis in original). The court accordingly ordered a new trial at which the jury should be instructed "that the state has the burden of proving beyond a reasonable doubt that defendant's acts were for the purpose of satisfying his sexual or aggressive impulses without including the offensive language to which we have referred." 281 N.W.2d at 501. The Wisconsin Supreme Court disapproved a similar "can reasonably be construed" instruction in *State v. Nye*, 105 Wis.2d 63, 312 N.W.2d 826 (1981), but held that the erroneous instruction was harmless error because "the jury, from the evidence presented, could not have reasonably construed the defendant's conduct as being undertaken for any purpose other than sexual gratification or arousal." 105 Wis.2d at 64, 312 N.W.2d at 826.

Neither the *Tibbets* case nor the *Nye* case addressed the precise question before us in this case, which is the constitutionality of the statute on which the instructions were based. As we note in the text, in *State v. Bicknese*, 285 N.W.2d 684 (Minn.1979), the Minnesota Supreme Court rejected a challenge that the "can reasonably be construed" language in the Minnesota definition of "sexual contact" was unconstitutionally vague, holding that such a challenge was implicitly rejected in *Tibbets* when the court remanded the case for a new trial under an appropriate jury instruction on the prosecution's burden of proof.

cause," without specifying the particular grounds on which the challenge was made. We recently noted that "it is incumbent upon the challenging party to clearly state of record the particular ground on which a challenge for cause is made" because "[o]nly in this way can the court and opposing counsel direct appropriate questions to the juror to determine whether the challenge is well taken." *People v. Russo,* 713 P.2d 356, 361 (1986). Notwithstanding defense counsel's failure to cast his challenge in specific terms, we will overlook the formal defects in the challenge and address whether the court erred in denying the challenge for cause.

The only conceivable legal basis for the causal challenge is section 16–10–103(1)(j), 8 C.R.S. (1978), which states that the court shall sustain a challenge for cause when the prospective juror is of a state of mind that evinces enmity or bias toward the defendant. *See also* Crim.P. 24(b)(1)(X). In *Russo,* 713 P.2d at 362, we recently considered the propriety of denying a challenge for cause under circumstances similar to those present here and stated:

> When a causal challenge for enmity or bias is made against a prospective juror who disavows any prejudicial bent of mind but nonetheless acknowledges some experience or knowledge that counsel believes could possibly affect the juror's competence to serve on the case, the trial court must be accorded considerable discretion in passing on the challenge.... A wide latitude of trial court discretion is appropriate under these circumstances because the resolution of the challenge will ultimately turn on an assessment of such intangibles as the juror's credibility with respect to [her] own state of mind and [her] attitude toward the serious responsibility of jury duty. Inasmuch as the juror's responses are made under oath, we believe it is the trial court's prerogative to give considerable weight to the juror's assurance that [she] can fairly and impartially serve on the case. In the absence of an affirmative showing of record that the trial court has clearly abused its discretion in passing

on the challenge for cause, its decision will not be disturbed on appeal.

(citations omitted). *See People v. Vigil,* 718 P.2d 496 (Colo.1986); *People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Taggart,* 621 P.2d 1375 (Colo.1981).

We find nothing in the transcript of the voir dire that establishes an abuse of discretion by the trial court in this case. The juror's responses to both counsel and the court established that, although some years ago she was an aunt by marriage to Jennifer Sherman and was of the opinion that this witness was a truthful person, she would not believe the witness's testimony merely because of her prior relationship with the witness and would be able to reject the witness's testimony if it was not credible. The trial court, which had the benefit of observing the juror's demeanor and general attitude, denied the challenge because, in its view, the juror manifested a willingness and ability to evaluate the witness's testimony by the same standards applicable to other witnesses and to discount that testimony if it was not credible. Under this state of the record, the trial court's decision to deny the challenge for cause was properly within its discretion.

## IV.

The defendant's final claim is that the evidence was insufficient to support the guilty verdict because it failed to establish that the touching was for the purpose of sexual arousal, gratification, or abuse. We reject the defendant's claim.

The standard for evaluating the sufficiency of evidence to support a jury verdict is whether the evidence, when viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable doubt. *E.g., People v. Brassfield,* 652 P.2d 588 (Colo. 1982); *People v. Franklin,* 645 P.2d 1 (Colo.1982); *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). It is only when the evidence is such that the jury must

necessarily have a reasonable doubt as to the defendant's guilt that a judgment of acquittal should be entered, and in making this determination the trial court should not attempt to serve as a thirteenth juror. *People v. Downer,* 192 Colo. 264, 268–69, 557 P.2d 835, 838 (1976). As we observed in *Brassfield,* 652 P.2d at 592:

> The limitation upon a judge's power to set aside a jury verdict is based, to a substantial degree, upon the fundamental tenet that it is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence. *People v. Franklin,* 645 P.2d at 5. Only when a witness' testimony is "palpably incredible and ... totally unbelievable" may the court properly reject it as a matter of law. *Id.* at 4; *People v. Gennings,* 196 Colo. 208, 583 P.2d 908 (1978); *People v. Urso,* 129 Colo. 292, 269 P.2d 709 (1954). Even then, a judgment of acquittal would still be inappropriate if the remaining evidence, when appropriately viewed, is legally sufficient to support a finding of guilt by a reasonable person beyond a reasonable doubt.

Although the evidence in this case raised a close question of fact for the jury, we are satisfied that there was substantial and sufficient evidence to support the jury's verdict. Three of the prosecution witnesses, who observed the defendant for a period of twenty minutes, described two incidents of sexual contact which involved the defendant's placement of his hands directly over the boy's clothing covering his intimate parts. These witnesses also testified that the touching appeared to be deliberate and not accidental. That a touching occurred was further corroborated by the ten year old victim, who described the manner in which the touching occurred and the defensive action taken because he thought the defendant might be doing it on purpose.

We cannot say that the prosecution's evidence was either incredible as a matter of law on the issue of "sexual contact" or so lacking in quantity or quality as to preclude a finding of guilt beyond a reasonable doubt. The trial court, therefore, did not err in denying the defendant's motion for a judgment of acquittal.

The judgment is affirmed.