James M. PRESTON, D.D.S., Petitioner,

v.

Renee DUPONT, Respondent.

No. 00SC492.

Supreme Court of Colorado,
En Banc.

Nov. 13, 2001.

As Modified on Denial of Rehearing
Dec. 3, 2001.

Davis Graham & Stubbs, LLP, Dale Harris, Andrew M. Low, Joel N. Varnell & Associates, J. Gregory Morrell, Denver, CO, Attorneys for Petitioner.

Leventhal & Brown, PC, Anthony J. Viorst, Denver, CO, Attorneys for Respondent.

Kennedy & Christopher, P.C., John R. Mann, Denver, CO, Amicus Curiae for Colorado Health and Hospital Association, Amicus Curiae for Physician Insurers Association of America.

McDermott and Hansen, William J. Hansen, Denver, CO, Amicus Curiae for Colorado Trial Lawyers Association.

Montgomery Little & McGrew, P.C., Robert N. Spencer, Patrick T. O'Rourke, Englewood, CO, Amicus Curiae for Colorado Medical Society.

Justice MARTINEZ delivered the Opinion of the Court.

In this case, we determine whether, in medical malpractice actions, which are governed by the Colorado Health Care Availability Act ("HCAA"), noneconomic losses or injuries caused by physical impairment or disfigurement are subject to the HCAA's $250,000 limitation on noneconomic damages. Resolution of this issue necessitates that we determine the relationship between section 13–21–102.5, 5 C.R.S. (2001), which limits noneconomic damages in general, civil actions, and section 13–64–302, 5 C.R.S. (2001), the section of the HCAA that limits noneconomic damages in medical malpractice actions.

Additionally, we decide whether the jury in a medical malpractice action should be instructed to award a separate category of damages for physical impairment and disfigurement in addition to the statutory categories set forth in section 13–64–204, 5 C.R.S. (2001), of the HCAA.

We affirm the court of appeals, although pursuant to different reasoning. We hold that the $250,000 cap on noneconomic damages contained in section 13–64–302 of the HCAA does not limit damages for physical impairment or disfigurement. More specifically, we hold that the definition of noneconomic damages in section 13–64–302 is not limited to subsections 13–21–102.5(2)(a) and (2)(b), but must also be construed in light of subsection 13–21–102.5(5), which excludes physical impairment and disfigurement from the 250,000 cap on noneconomic damages. As a result, we find that it is proper for a trial court to instruct a jury in a medical malpractice action to award a separate category of damages for physical impairment and disfigurement.

I.

Plaintiff–Respondent Renee Dupont ("Dupont") filed a medical malpractice claim against her dentist, Defendant Petitioner James M. Preston ("Preston"). Dupont sustained injuries after several botched root canals performed by Preston, in which he used a controversial technique not taught in dental

schools. As a result of Preston's dental malpractice, Dupont sustained permanent damage to her alveolar nerve, causing numbness and severe pain in her jaw that will continue throughout her life. She also sustained permanent loss of sensitivity in part of her chin. The jury found in favor of Dupont and awarded her $34,933.12 for economic damages arising from medical expenses, $240,000 for noneconomic damages, and $22,000 for physical impairment. The trial court awarded prejudgment interest and entered judgment against Preston.

The court of appeals modified the judgment and, as modified, affirmed.[1] The court of appeals determined that damages for physical impairment and disfigurement were not subject to the HCAA's damages cap because there is no specific mention of such damages in the definition of noneconomic damages contained in subsections 13–21–102.5(2)(a) and (2)(b) of the general damages statute, which are expressly incorporated into the HCAA's damages cap. *Dupont v. Preston*, 9 P.3d 1193, 1198 (Colo.App.2000). Further, the court of appeals reasoned that because damages for physical impairment or disfigurement can be economic or noneconomic, and because the literal language of subsections 13–21–102.5(2)(a) and (2)(b) is applicable only to noneconomic damages, there was additional support for its decision not to construe physical impairment and disfigurement in the definition of noneconomic loss contained in the HCAA's damages cap. *Id.* Finally, the court of appeals found that the HCAA's cap on noneconomic damages was applicable only to the specific damages listed in subsection 13–21–102.5(2)(b) and incorporated into section 13–64–302 of the HCAA, namely pain and suffering, inconvenience, emotional stress, and impairment of the quality of life. *Id.*

## II.

We granted certiorari in this case to determine the relationship between section 13–64–204 ("the 204 required findings") and section 13–64–302 ("the 302 HCAA cap") of the HCAA, and section 13–21–102.5 ("the 102.5 general cap") of the general damages statute.[2]

The 302 HCAA cap limits liability in medical malpractice actions.[3] This cap limits the total amount recoverable from all defendants to $1 million. The 302 HCAA cap also states that not more than $250,000 of the $1 million cap "shall be attributable to noneconomic loss or injury." § 13–64–302(1), 5 C.R.S. (2001).

The 302 HCAA cap defines "noneconomic loss" by incorporating subsections 13–21–102.5(2)(a) and (2)(b) of the general damages

---

1. The court of appeals modified the judgment for noneconomic damages. The court of appeals found that the trial court erroneously excluded the amount of prejudgment interest from the total amount of noneconomic damages in violation of subsection 13–64–302(2). As a result, the court of appeals held that, because the jury awarded Dupont $240,000 for noneconomic damages, prejudgment interest could total no more than $10,000, and modified the award for noneconomic damages accordingly. This modification is not at issue in this appeal.

2. The issues reviewed on certiorari were framed as follows:

    (1) Whether in medical malpractice actions, which are governed by the Colorado Health Care Availability Act ("the HCAA"), are noneconomic losses or injuries caused by physical impairment or disfigurement subject to the HCAA's $250,000 limitation on noneconomic damages.

    (2) Should the jury in a medical malpractice action be instructed to award a separate category of damages for physical impairment and disfigurement in addition to the statutory categories set forth in section 204 of the HCAA?

3. Section 13–64–302, 5 C.R.S. (2001), states, in pertinent part:

    **Section 13–64–302 Limitation of liability interest on damages.** (1) The total amount recoverable for all damages for a course of care for all defendants in any civil action for damages in tort brought against a health care professional, as defined in section 13–64–202, or a health care institution, as defined in section 13–64–202, or as a result of binding arbitration, whether past damages, future damages, or a combination of both, shall not exceed one million dollars, present value per patient, including any derivative claim by any other claimant, of which not more than two hundred fifty thousand dollars, present value per patient, including any derivative claim by any other claimant, shall be attributable to noneconomic loss or injury, as defined in section 13–21–102.5(2)(a) and (2)(b), whether past damages, future damages, or a combination of both....

statute.[4] Subsection 13–21–102.5(2)(a), which is not at issue in this case, defines derivative noneconomic loss. Subsection 13–21–102.5(2)(b), which is at issue in this case, defines "noneconomic loss" as "nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, including pain and suffering, inconvenience, emotional stress, and impairment of the quality of life." § 13–21–102.5(2)(b), 5 C.R.S. (2001).

Additionally, subsection 13–21–102.5(5) of the general damages statute ("the 102.5(5) physical impairment subsection") is implicated in this case. The 102.5(5) physical impairment subsection states that "[n]othing in this section [102.5] shall be construed to limit the recovery of compensatory damages for physical impairment or disfigurement." § 13–21–102.5(5), 5 C.R.S. (2001). The 102.5(5) physical impairment subsection is not expressly incorporated into either the 204 required findings or the 302 HCAA cap.

Finally, section 13–64–204 is triggered when a defendant is found liable under the HCAA. The 204 required findings instruct the trier of fact to make specific findings, including past and present damages for medical and health care costs, lost earnings, economic loss (excluding lost earnings), and noneconomic damages.[5] The 204 required findings instruct the trier of fact to make the specific findings for the purpose of determining periodic payments. *See* § 13–64–203, 5 C.R.S. (2001). However, the 204 required findings also explicitly state that the trier of fact will make "other appropriate findings" in addition to the specific findings required by section 13–64–204. For purposes of the 204 required findings, "noneconomic loss" is defined as "nonpecuniary harm for which damages are recoverable under the laws of this state, but the term does not include punitive or exemplary damages." § 13–64–202(5).

The question raised upon review of these statutes is whether noneconomic damages for physical impairment or disfigurement in a medical malpractice action are included in the 302 HCAA cap. In its most basic form, the issue is whether the definition of "noneconomic loss" contained in the 302 HCAA cap, which incorporates the definition of that term from the 102.5 general cap, limits dam-

---

4. Section 13–21–102.5, 5 C.R.S. (2001), states in pertinent part:

**Section 13–21–102.5  Limitations on damages for noneconomic loss or injury.** (1) The general assembly finds, determines, and declares that awards in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in this state; therefore, for the protection of the public peace, health, and welfare, the general assembly enacts this section placing monetary limitations on such damages for noneconomic losses or injuries.

(2) As used in this section:

(a) "Derivative noneconomic loss or injury" means nonpecuniary harm or emotional stress to persons other than the person suffering the direct or primary loss or injury.

(b) "Noneconomic loss or injury" means nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, including pain and suffering, inconvenience, emotional stress, and impairment of the quality of life. "Noneconomic loss or injury" includes a damage recovery for nonpecuniary harm for actions brought under section 13–21–201 or 13–21–202.

. . . .

(5) Nothing in this section shall be construed to limit the recovery of compensatory damages for physical impairment or disfigurement.

5. Section 13–64–204, 5 C.R.S. (2001), states, in pertinent part:

**13–64–204.  Special damages findings required**

(1) If liability is found in a trial under this part 2, the trier of fact, in addition to other appropriate findings, shall make separate findings for each claimant specifying the amount of:

(a) Any past damages for each of the following types:

(I) Medical and other costs of health care;

(II) Other economic loss except loss of earnings;

(III) Loss of earnings; and

(IV) Noneconomic loss;

(b) Any future damages and the period of time over which they will be paid, for each of the following types:

(I) Medical and other costs of health care;

(II) Other economic loss except loss of future earnings which would be incurred for the life of the claimant or any lesser period;

(III) Loss of future earnings which would be incurred for the work life expectancy of the claimant or a lesser period; and

(IV) Noneconomic loss which would be incurred for the life of the claimant or any lesser period. . . .

ages for physical impairment or disfigurement.

## III.

When the language of a statute is clear and unambiguous, we apply the statute as written and do not need to resort to the interpretive rules of statutory construction. *Gen. Elec. Co. v. Niemet,* 866 P.2d 1361, 1364 (Colo.1994). However, if a statute is unclear and the language lends itself to alternative constructions, we may look to the relevant legislative history to determine which construction is in accordance with the legislature's intent and purpose. *People v. Terry,* 791 P.2d 374, 376 (Colo.1990). Our task is to construe the statute to further the legislative intent as evidenced by the entire statutory scheme. *Meyers v. Price,* 842 P.2d 229, 231 (Colo.1992).

## A.

Both parties insist that the 302 HCAA cap is plain and unambiguous, but reach different conclusions regarding its impact on damages for physical impairment and disfigurement. Preston asserts that the statutory language of section 13–64–302 limits noneconomic damages without exception to $250,000. He concludes that the limitation necessarily includes any damages for physical impairment and disfigurement.

Preston further contends that the plain and unqualified language of the HCAA prevails over any purported inconsistent language from the general damages statute. He asserts that because the 302 HCAA cap incorporates only subsections 102.5(2)(a) and (2)(b) of the general damages statute, and does not expressly incorporate subsection 13–21–102.5(5) of the general damages statute, it is improper to conclude that the 302 HCAA cap excludes damages for physical impairment and disfigurement. Preston argues that the definition of "noneconomic loss or injury" in the 102.5 general cap, as incorporated into the 302 HCAA cap, must include physical impairment and disfigurement damages. To support this contention, he relies specifically on the 102.5 general cap, which defines noneconomic loss as "nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, *including* pain and suffering, inconvenience, emotional stress, and impairment to the quality of life." § 13–21–102.5(2)(b), 5 C.R.S. (2001) (emphasis added). He contends that the word "includes" is one of expansion and thus concludes that the 102.5 general cap as it is incorporated into the 302 HCAA cap, must "include" physical impairment and disfigurement in its definition of noneconomic loss, notwithstanding the fact that physical impairment and disfigurement are not specifically articulated in that definition.

Preston next argues that the court of appeals' decision conflicts with the federal district court's decision in *Ledstrom v. Keeling,* 10 F.Supp.2d 1195, 1199 (D.Colo.1998), which held that damages for physical impairment and disfigurement are included in the 302 HCAA cap.

Finally, Preston argues that even if this court determines that section 13–64–302 is ambiguous, the legislative history makes clear that the intent of that section is to cap all noneconomic damages, including damages for physical impairment and disfigurement, at $250,000. He further argues that the General Assembly intended the term "compensatory damages" in the 102.5(5) physical impairment subsection to refer only to economic damages. Preston relies on a discussion from the conference committee that reconciled the House and Senate versions of the HCAA. During that discussion, the following exchange occurred between Representative Barry and Senator Glass about the meaning of the term "compensatory" as it relates to physical impairment and disfigurement in subsection 13–21–102.5(5):

Sen. Glass: And with "compensatory" meaning "economic" damages?

Rep. Barry: Right. Actual economic damages.

Sen. Glass: Do we need to define that? Or do we—Why don't we just say "economic" or—?

Rep. Barry: That's what compensatory means.

Hearing on S.B.67 Before the First Conference Committee, 55th Gen. Assembly, 2d Reg. Sess., May 13, 1986.

Preston argues that this exchange demonstrates the legislature's intent to limit all noneconomic damages awarded under the HCAA, including damages for physical impairment and disfigurement, to $250,000. Thus, he asserts, even if we determine that the 102.5(5) physical impairment subsection must be referred to in interpreting the 102.5 general cap, as it is incorporated into the 302 HCAA cap, the General Assembly clearly intended for the exception in subsection 13–21–102.5(5) to apply only to economic damages that flow from physical impairment and disfigurement.

Dupont also argues that the 302 HCAA cap is unambiguous. She argues that the definitions incorporated into section 13–64–302, namely the 102.5 general cap, must be read alongside the 102.5(5) physical impairment subsection, which mandates that subsection 13–21–102.5(2)(b) shall not be construed to limit the recovery of compensatory damages for physical impairment and disfigurement.

### B.

We agree with the parties that none of the statutory provisions at issue in this case is ambiguous. Rather, the language of each is clear and unambiguous. In fact, we have previously held that the 302 HCAA cap is not ambiguous on its face. *See Colo. Permanente Med. Group, P.C. v. Evans,* 926 P.2d 1218, 1230 (Colo.1996).

■ Part 2 of the HCAA, which includes the 204 required findings, relates to the determination and allocation of periodic payments. *See* §§ 13–64–201 to 213, 5 C.R.S. (2001). To this end, section 13–21–204 describes the findings that the trier of fact must make before it can determine the allocation of damages, past and present. As previously discussed, the 204 required findings list four different types of damages, both past and present, that the trier of fact shall determine. These four categories consist of medical or other health care costs; other economic loss except loss of earnings;

loss of earnings; and noneconomic damages. § 13–64–204, 5 C.R.S. (2001). Notably, the language of the 204 required findings, "in addition to other appropriate findings," does not limit the available damages to these four categories. This language does not preclude recovery of physical impairment and disfigurement damages under the HCAA.

Part 3 of the HCAA addresses limitations on damages awards in medical malpractice actions. It caps all damages, past and present, at $1 million, of which no more that $250,000 may be noneconomic damages. § 13–64–302(1), 5 C.R.S. (2001). To define the term "noneconomic loss" for purposes of this cap, the 302 HCAA cap incorporates the definition of noneconomic loss contained in the 102.5 general cap.

Preston correctly states that subsection 13–21–102.5(2)(b) is written to be expansive and not limiting. The definition of "noneconomic loss or injury" in this section contains the word "including" before listing some examples of such damages. Those examples do not expressly mention physical impairment and disfigurement. We have held that a statutory definition of a term as "including" certain things does not restrict the meaning to those items specified. *Cherry Creek Sch. Dist. # 5 v. Voelker,* 859 P.2d 805, 813 (Colo. 1993). Indeed, the word "include" is ordinarily used as a word of extension or enlargement. *Id.* We thus disagree with the court of appeals' holding that the 102.5 general cap, as incorporated into the 302 HCAA cap, limits recovery of noneconomic loss to only the specific categories listed.

■ Our conclusion that the word "includes" in the 102.5 general cap is one of expansion does not, however, end our inquiry or analysis. We must also consider the 102.5(5) physical impairment subsection, which states: "Nothing in this section shall be construed to limit the recovery of compensatory damages for physical impairment or disfigurement." § 13–21–102.5(5), 5 C.R.S. (2001). Although the 102.5(5) physical impairment subsection is not expressly incorporated into the 302 HCAA cap, as is the 102.5 general cap, we may not ignore it, as suggested by Preston.

The use of the word "construe" in the 102.5(5) physical impairment subsection is significant. Construe means to analyze, explain, or put a construction on. *See People v. West,* 724 P.2d 623, 627 (Colo.1986); *Theodore Roosevelt Agency, Inc. v. Gen. Motors Acceptance Corp.,* 156 Colo. 237, 239–40, 398 P.2d 965, 966 (1965). Thus, the 102.5(5) physical impairment subsection mandates that no part of section 13–21–102.5 may be explained or analyzed to limit damages for physical impairment or disfigurement. § 13–21–102.5(5). Therefore, the 102.5(5) physical impairment subsection must guide the construction of the entirety of section 13–21–102.5, including the 102.5 general cap that is incorporated into the 302 HCAA cap.

Additionally, the principle that we must interpret a statute to give effect to the entire statutory scheme further supports our conclusion that subsection 13–21–102.5(5) must be considered when determining the relationship between the 102.5 general cap and the 302 HCAA cap. *See Gen. Elec. Co. v. Niemet,* 866 P.2d 1361, 1364 (Colo.1994) (citing *Meyers v. Price,* 842 P.2d 229 (Colo.1992)). To disregard the explicit constructive directive contained in the 102.5(5) physical impairment subsection would thus violate a well-established principle of statutory interpretation.

Accordingly, the fact that the 102.5(5) physical impairment subsection is not expressly incorporated into the 302 HCAA cap is not dispositive. The 102.5(5) physical impairment subsection is a legislative directive that controls our construction of the entire general damages section. Thus, it did not need to be expressly incorporated into the 302 HCAA cap in order to affect the interpretation of subsection 13–21–102.5(2)(b), which *is* expressly incorporated into the 302 HCAA cap.

The 102.5(5) physical impairment subsection expressly directs that damages for physical impairment and disfigurement are *not* to be included in the definition of noneconomic damages contained in subsection 13–21–102.5(2)(b). Accordingly, the 102.5(5) physical impairment subsection prohibits us from construing the 102.5 general cap so as to limit the recovery of compensatory damages

for physical impairment and disfigurement under the 302 HCAA cap. Therefore, subsection 13–21–102.5(2)(b) must be construed as excluding physical impairment and disfigurement damages from the definition of noneconomic damages as it is incorporated and used in the 302 HCAA cap.

Furthermore, although the presence of the word "includes" in the 102.5 general cap denotes that the examples listed are not exhaustive or exclusive, the presence of that word does not require that physical impairment and disfigurement be included. Although the 102.5 general cap, and thus the 302 HCAA cap, may encompass other forms of noneconomic damages in addition to those listed, the 102.5(5) physical impairment subsection mandates that physical impairment and disfigurement are not among those other forms.

Preston incorrectly asserts that this analysis and conclusion conflicts with our decision in *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993). In *Scholz,* the plaintiff argued that subsection 102.5(3)(a) of the general damages statute, which permits an award of noneconomic damages to exceed $250,000 in certain circumstances, applies to actions under the HCAA. *Id.* at 907. We rejected that argument, stating that the HCAA did not contain any analogous provision. *Id.* at 907–08. Preston argues that if we accept the argument that physical impairment and disfigurement damages are an exception to the HCAA's cap on noneconomic damages because of the 102.5(5) physical impairment subsection, we are in effect reading into the HCAA a provision of the general damages statute where an analogous provision did not previously exist, thus contradicting our reasoning in *Scholz.*

We are unpersuaded by Preston's reasoning. In *Scholz,* we considered a subsection of section 13–21–102.5, subsection 13–21–102.5(3)(a), that was not affected by the rule of construction contained in subsection 13–21–102.5(5). In contrast, the 102.5(5) physical impairment subsection is implicated in this case. Further, in *Scholz* we determined that the HCAA specifically addressed the issue of the amount of the cap on noneconomic damages and determined it to be $250,000.

*Id.* at 907–08. In this case, the HCAA does not specifically address whether physical impairment and disfigurement are to be included in the category of noneconomic damages that is subject to the cap. The absence of explicit direction in the HCAA regarding physical impairment and disfigurement, coupled with the express direction of statutory construction contained in the 102.5(5) physical impairment subsection, distinguishes our reasoning and result in this case from our reasoning and result in *Scholz*. Finally, *Scholz* provides support for our finding that physical impairment and disfigurement are not included in the noneconomic damages that are capped by the 302 HCAA cap. In *Scholz* we left undisturbed a jury award of damages in several categories: past and future economic losses, noneconomic losses, and physical impairment. *Id.* at 903 n. 2. We also left undisturbed the *Scholz* trial court's decision to reduce the noneconomic damages award to $250,000 pursuant to the 302 HCAA cap and its decision to neither reduce the award for physical impairment nor merge that award into the award for noneconomic damages. *Id.* at 904.

[redacted] Finally, we reject Preston's assertion that the legislative history requires us to conclude that physical impairment and disfigurement are included in the 302 HCAA cap. Preston's argument is unpersuasive for several reasons. First, when the meaning of a statute is clear and unambiguous, as we have explained here, we do not look to legislative history. Second, the term "compensatory damages" has a specific, defined meaning. Contrary to the assertion of Representative Barry, it is not simply synonymous with "economic." Instead, compensatory damages are those that compensate a victim and make her whole. *Kirk v. Denver Publ'g Co.,* 818 P.2d 262, 265 (Colo.1991). They can be both economic and noneconomic. *Id.* They stand in contrast to punitive damages, which serve to punish a wrongdoer. *Id.* Third, although it is clear that the members of the General Assembly who engaged in the cited dialogue misunderstood the meaning of the term "compensatory damages," that misunderstanding cannot be imputed to the entire General Assembly, the majority of whom were not present in the conference committee to witness the cited discussion. Finally, even if we were to assume that all of the members of the General Assembly were aware of Representative Barry's incorrect definition of compensatory damages, we would reach the same conclusion because members of the General Assembly vote for many different reasons; we cannot presume to know that the members of the General Assembly voted to include the 102.5(5) physical impairment subsection because they accepted Representative Barry's misunderstanding of the meaning of the term compensatory damages. Accordingly, even if the legislative history were considered, it does not support Preston's position.

C.

[redacted] Our conclusion today, grounded in our plain meaning analysis, is further supported by the principle that statutes may not be interpreted to abrogate the common law unless such abrogation was clearly the intent of the General Assembly. The plain meaning rule and the principle that a statute may not abrogate the common law absent legislative intent to do so inform each other: The standard for judicial interpretation of a statute in abrogation of the common law, namely that a statute purporting such abrogation must expressly or by clear implication do so, requires more than an "imagined connection." We will not strain to give language other than its plain meaning. *Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997). Accordingly, that the outcome of our plain meaning analysis comports with common law principles regarding damages further convinces us that it is correct.

[redacted] A statute is not presumed to alter the common law except to the extent that such statute expressly provides. *Robinson v. Kerr,* 144 Colo. 48, 52, 355 P.2d 117, 120 (1960). Statutes in derogation of the common law must be strictly construed in favor of the person against whom their provisions are intended to be applied. *In re Estate of Randall,* 166 Colo. 1, 9, 441 P.2d 153, 156 (1968); *State v. First Interstate Bank of Denver, N.A.,* 743 P.2d 449 (Colo.App.1987). Although the General Assembly possesses

the authority to abrogate common law remedies, we will not infer a legislative abrogation of that right absent a clear expression of intent. *Vaughan,* 945 P.2d at 408 (citing *Kristensen v. Jones,* 195 Colo. 122, 125–26, 575 P.2d 854, 855 (1978)).

Physical impairment damages have historically been considered a separate element of damages under Colorado common law. *See, e.g., Barter Mach. & Supply Co. v. Muchow,* 169 Colo. 100, 102–03, 453 P.2d 804, 805 (1969); *Celebrities Bowling, Inc. v. Shattuck,* 160 Colo. 102, 107–08, 414 P.2d 657, 659–60 (1966); *Heckman v. Warren,* 124 Colo. 497, 500, 238 P.2d 854, 856 (1951); *Denver Tramway Corp. v. Gentry,* 82 Colo. 51, 58, 256 P. 1088, 1091 (1927); *Rodriguez v. Denver & Rio Grande Western R. Co.,* 32 Colo.App. 378, 381–82, 512 P.2d 652, 654 (1973). Damages for disfigurement have also historically been recognized as a separate element of damages. *See, e.g., Rein v. Jarvis,* 131 Colo. 377, 381, 281 P.2d 1019, 1020 (1955); *King v. Avila,* 127 Colo. 538, 540, 259 P.2d 268, 269 (1953); *Knaus v. Yoder,* 98 Colo. 1, 4, 52 P.2d 1152, 1153 (1935).

Physical impairment and disfigurement are often the most serious and damaging consequences of a defendant's negligence or misconduct. Recovery for these damages at common law thus flowed from the general principle that whoever unlawfully injures another shall make her whole. *Kirk v. Denver Publ'g Co.,* 818 P.2d 262, 265 (Colo.1991); *Bullerdick v. Pritchard,* 90 Colo. 272, 274–75, 8 P.2d 705, 705–06 (1932). Because damages for these injuries are often the most important in making the plaintiff whole, a separate category of damages for physical impairment and disfigurement is necessary and important:

> [A]n innocent victim is entitled to have a sound body and mind throughout his or her life. . . . If someone tortiously inflicts a permanent injury on another he or she has taken away something valuable which is independent and different from other recognized elements of damages such as pain and suffering and loss of earning capacity. For this invasion the plaintiff should be awarded a separate sum in addition to the compensation for the other elements and such recovery should be proportional to the severity of the injury.

2 Marilyn Minzer et al., *Damages in Tort Actions* § 12.02 (Matthew Bender 1992).

Accordingly, any interpretation of the 302 HCAA cap that would include damages for physical impairment and disfigurement within its $250,000 cap on noneconomic damages would be in derogation of the common law right to recover that category of damages. To accept Preston's point of view would, in abrogation of the common law, greatly diminish or eliminate the recovery of what is often the most important type of damages. Such an interpretation would thus change the course of the law significantly. We decline to read into this clear and unambiguous statute such a dramatic change in the common law. If our conclusion here does not comport with the General Assembly's intention in passing the HCAA's cap on noneconomic damages it is the legislature, not the court, that must rewrite it.

We thus disagree with the federal district court's holding in *Ledstrom v. Keeling,* 10 F.Supp.2d 1195 (D.Colo.1998). In *Ledstrom,* the federal district court addressed the same issue we address today and reached the opposite conclusion. The *Ledstrom* court held that because the 102.5(5) physical impairment subsection was not expressly incorporated into the 302 HCAA cap, it could not be considered in addressing the issue of physical impairment and disfigurement damages under the HCAA. Our foregoing discussion, specifically of the principle mandating a statute be interpreted to give effect to the entire statutory scheme and the expressly directive nature of subsection 13–21–102.5(5), explains our disagreement with the *Ledstrom* court's reasoning and conclusion.

## IV.

We thus conclude that the plain and unambiguous meaning of the general damages cap contained in subsection 13–21–102.5(2)(b), the physical impairment subsection contained in subsection 13–21–102.5(5), and the HCAA damages cap contained in section 13–64–302, mandate our holding that noneconomic damages for physical impair-

ment and disfigurement are not included in the definition of noneconomic loss contained in the HCAA's cap on such damages. Thus, the $250,000 cap on noneconomic damages in section 13–64–302 does not limit the amount of damages for noneconomic loss from physical impairment or disfigurement that a plaintiff may recover in a medical malpractice action. Accordingly, such damages properly constitute a separate category for the jury's deliberation. The court of appeals' judgment is affirmed.

Justice COATS dissents, and Justice KOURLIS joins in the dissent.

Justice COATS, dissenting:

Because I disagree with the majority's conclusion that none of the statutory provisions at issue in this case is ambiguous, and because I would resolve what I consider to be the ambiguity in the statutes in a way leading to a different conclusion about the HCAA's treatment of physical impairment or disfigurement, I respectfully dissent.

The crux of the majority's analysis, is that subsection (5) of section 13–21–102.5, 5 C.R.S. (2001), which addresses the treatment of compensatory damages for physical impairment or disfigurement as part of the legislature's treatment of damages generally, is a rule of construction that clearly and unambiguously applies to the definitions of "Derivative noneconomic loss or injury" and "Noneconomic loss or injury" in subsections (2)(a) and (b). Because subsection (5) mandates that nothing in section 102.5 shall be construed to limit the recovery of compensatory damages for physical impairment or disfigurement, and subsection (3) of the same section limits damages for noneconomic and derivative noneconomic injury, the majority finds that subsection (5) "expressly directs that damages for physical impairment and disfigurement are *not* to be included in the definition of noneconomic damages." Maj. op. at 440. Since section 302 of the Health Care Availability Act (HCAA), § 13–64–302,

5 C.R.S. (2001), defines "noneconomic loss or injury" for purposes of medical malpractice as being the equivalent of both "noneconomic loss or injury" and "derivative noneconomic loss or injury," as defined in section 13–21–102.5(2)(b) and (2)(a), the majority reasons that the HCAA cap on damages for "noneconomic loss or injury" does not apply to compensatory damages for physical impairment or disfigurement.

Initially, I disagree that subsection 102.5(5) unambiguously applies to the definition of "noneconomic loss or injury." Section 13–21–102.5 defines "noneconomic loss or injury" in subsection (2)(b) and in subsection (3) imposes limitations on the damages recoverable for such loss or injury. Rather than limiting or creating an exception to the definition of "noneconomic loss or injury" itself, subsection (5), on its face, speaks to the section's damage-limiting provisions. To the extent that subsection (5) can be read to merely exempt compensatory damages for physical impairment or disfigurement from the damage cap of subsection (3), rather than excluding from the category of "noneconomic loss or injury" altogether any "inconvenience, emotional stress, and impairment of the quality of life" caused by physical impairment or disfigurement, the statute is at least ambiguous.

In fact, however, subsection (5)'s specific reference to limitations on damages rather than to the nature of injuries, as well as the stated purpose of the HCAA, *see* § 13–64– 102 (Legislative declaration), its more rigid limitation of damages,[1] and its choice to broaden rather than to narrow its definition of "noneconomic loss or injury" by including both personal and derivative injuries,[2] all militate in favor of construing subsection (5) as applying merely to the damage caps of subsection (3) rather than to the meaning of "noneconomic loss or injury" itself. Because the definition of "noneconomic loss or injury" in subsection 102.5(2)(b) already includes various kinds of loss or injury that could be

---

1. Unlike the general damages provision of section 13–21–102.5(3), the HCAA does not permit the limit on damages for noneconomic loss or injury to be doubled when justified by clear and convincing evidence.

2. Unlike section 13–21–102.5(3), derivative noneconomic loss or injury and noneconomic loss or injury are combined and treated under a single damage cap of $250,000.

attributable to physical impairment or disfigurement, subsection (5), even if it were applicable to subsections (2)(b), would provide more of an exception to the existing definition than a rule of construction.[3] Unlike the majority, I would not attribute to the legislature an intent to include an exception to the definition of "noneconomic loss or injury," not contained in the definitional subsection itself, from language expressly incorporating the definitional subsection but failing to mention any subsection containing an exception to it.

Nor do I believe that the rule of construction requiring a clear intent to abrogate the common law requires a different resolution of the ambiguity. *See* maj. op. at 440–441. The HCAA's intent to abrogate the common law by limiting damages for medical malpractice could not be more clear. To that end, the statutory scheme limits the total amount recoverable for all damages, past and future, for all defendants, in any civil action for damages in tort brought against a health care professional or institution, including any derivative claim by any other claimant. *See* § 13–64–302, 5 C.R.S. (2001). The majority rationale does not question that the legislature intended to and successfully has limited common-law damages for physical impairment and disfigurement. Maj. op. at 435–436. The only question at issue in this case is whether they fall within the sub-category of damages for noneconomic loss or injury, defined broadly as damages recoverable under the laws of this state for nonpecuniary harm. While damages for physical impairment and disfigurement have been treated as involving more than damages for pain and suffering or loss of earning capacity, and for that reason have sometimes involved special requirements of proof, I find no indication that they would have been considered to fall outside a comprehensive scheme categorizing compensatory damages, both past and future, according to whether the harm from which

they result is pecuniary or nonpecuniary in nature.

While I do not find the language of incorporation in section 302 of the HCAA and the provisions of section 13–21–102.5, in and of themselves, to be clear and unambiguous with regard to the HCAA's intended treatment of physical impairment or disfigurement, I do believe that the statutory scheme as a whole expresses a clear intent to include the nonpecuniary aspects of the harm resulting from physical impairment or disfigurement within the category of "noneconomic loss or injury," and that the language of the statutes is susceptible of such a construction. I therefore respectfully dissent.

Justice KOURLIS joins in the dissent.

---

3. The majority places great emphasis on the word "construed" in subsection (5) and concludes that although the definition of noneconomic loss or injury in subsection (2)(b) "may encompass other forms of noneconomic damages in addition to those listed, the 102.5(5) physical impairment subsection mandates that physical impairment and disfigurement are not among those other forms." Maj. op. at 441–442. The list in subsection (2)(b), however, need not be expanded to include the nonpecuniary harm resulting from physical impairment and disfigurement because it already does so, in the absence of some exception or limitation on the terms that are already included.