Rodger L. PRICE, and Claudia E. Price, Plaintiffs,

v.

WALGREEN CO., Defendant.

No. 99–F–757 (OES).

United States District Court, D. Colorado.

June 16, 2004.

Phil Cody Pearson, M.D., J.D., Phil C. Pearson, M.D., J.D., Greenwood Village, CO, Brian J. Lampert, Lampert & Associates, LLC, Denver, CO, for Plaintiffs.

Andrew M. Low, Davis, Graham & Stubbs LLP, Lorraine Elizabeth Parker, Leventhal, Brown & Puga, PC, Joel A. Kolodny, David Christopher Fawley, Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Denver, CO, Peter S. Dusbabek, Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Fort Collins, CO, for Defendant.

### AMENDED JUDGMENT

FIGA, District Judge.

This matter was tried on plaintiffs' two claims on May 10, 2004, through May 14, 2004, before a duly sworn jury of eight, Judge Phillip S. Figa, presiding. The trial proceeded to conclusion and the jury rendered its verdict as follows:

1. Did plaintiff Rodger Price incur injury, damages or losses?

Yes.

2. Was the negligence of Walgreen Co. a cause of any of the injury, damages or losses incurred by plaintiff Rodger Price?

Yes.

3. Past damages: What is the total amount of damages or losses which the plaintiff Rodger Price has had to the present in each of the following categories? Enter the figure "0" if you determine there were no damages in that category.

   a. Medical and other health care expenses: $ 88,179.00

   b. Lost earnings or earning capacity: $ 21,500.00

   c. Economic losses other than those included immediately above in a. and b.: $0

   d. Physical impairment and disfigurement: $400,000.00

   e. Non-economic losses, including impairment of the quality of life, inconvenience, pain and suffering and emotional distress: $150,000.00

4. Future damages: What is the present value of the total amount of damages, if any, which the plaintiff Rodger Price will probably have in the future in each of the following categories? Enter the figure zero "0" if you determine there were no damages in that category. For each category in which you determine that plaintiff will probably have future damages, you must also indicate the period of time that plaintiff will probably have those future damages.

   a. Medical and other health care expenses: $265,000.00 From present to death.

   b. Lost earnings: $ 21,500.00 From present to age 70.

   c. Other economic losses other than that included in a and b, above: $ 45,000.00 From present to death.

   d. Non-economic losses including impairment of the quality of life, inconvenience, pain and suffering and emotional distress: $150,000.00 From present to death.

5. Did plaintiff Claudia Price incur damages?

Yes.

6. Was the negligence of Walgreen Co. a cause of any of the damages incurred by plaintiff Claudia Price?

Yes.

7. What is the total amount of damages which Claudia Price has had to the present? Enter the figure zero "0" if you determine there were no damages in that category:

   a. non-economic damages in the form of loss of affection, society, companionship, and aid and comfort of the injured spouse: $25,000.00    From 1996 to present.
   b. economic damages for loss of household services the injured spouse would have performed and any resulting expenses which plaintiff has had or which plaintiff will have in the future including lawn maintenance, household maintenance, and household repair:
     $0

8. Future damages: What is the present value of the total amount of damages, if any, which Claudia Price will probably have in the future ? Enter the figure zero

"0" if you determine there were no damages in that category. If you determine that Claudia Price will probably have future injuries, damages, or losses, you must also indicate the period of time that Claudia Price will probably have those future injuries, damages, or losses.

   a. non-economic damages in the form of loss of affection, society, companionship, and aid and comfort of the injured spouse: $25,000.00    From present to death.
   b. economic damages for loss of household services the injured spouse would have performed and any resulting expenses which plaintiff has had or which plaintiff will have in the future including lawn maintenance, household maintenance, and household repair:
     $0

Pursuant to and in accordance with the Order on Post–Trial Motions signed by Judge Phillip S. Figa on June 16, 2004, judgment is entered in favor of Plaintiffs Rodger L. Price and Claudia E. Price and against Defendant Walgreen Co. as follows:

| | | Award | * PJI | Total |
|---|---|---|---|---|
| **3.** | **Past damages as to Rodger Price:** | | | |
| a. | Medical and other health care expenses | 88,179.00 | 75,892.20 | 164,071.20 |
| b. | Lost earnings or earning capacity | 21,500.00 | 18,504.21 | 40,004.21 |
| d. | Physical impairment and disfigurement | 400,000.00 | 344,264.31 | 744,264.31 |
| e. | Non-economic losses | 150,000.00 | 129,099.12 | 279,099.12 |
| **7.** | **Past damages as to Claudia Price:** | | | |
| a. | Non-economic damages | 25,000.00 | 21,516.52 | 46,516.52 |
| | Total | 684,679.00 | 589,276.36 | 1,273,955.36 |
| **4.** | **Future damages as to Rodger Price:** | | | |
| a. | Medical and other health care expenses | 265,000.00 | 228,075.11 | 493,075.11 |
| b. | Lost earnings | 21,500.00 | 18,504.21 | 40,004.21 |
| c. | Other economic losses other than a and b | 45,000.00 | 38,729.74 | 83,729.74 |
| d. | Non-economic losses | 150,000.00 | 129,099.12 | 279,099.12 |
| **8.** | **Future damages as to Claudia Price:** | | | |
| a. | Non-economic damages | 25,000.00 | 21,516.52 | 46,516.52 |
| | Total | 506,500.00 | 435,924.70 | 942,424.70 |
| **GRAND TOTAL** | | 1,191,179.00 | 1,025,201.06 | 2,216.380.06 |

Plaintiffs timely filed a response to the Court's Order on June 3, 2004, arguing that the Health Care Availability Act did not apply to this case. On the same day, defendant timely filed a motion to alter or amend the judgment and a separate motion for judgment as a matter of law, or in the alternative, for a new trial. The Court

now enters its rulings on these respective motions arguments.

**DEFENDANT'S MOTION FOR JUDGMENT AS MATTER OF LAW, OR FOR NEW TRIAL**

In the instant case, Plaintiff Rodger Price alleged that Defendant Walgreen

---

* At the rate of 9% C.R.S. § 13–21–101. Simple interest to date of filing complaint and compound interest from date of filing of complaint.

Co., negligently misfilled a prescription for a thyroid hormone replacement medication in November 1996 by giving him twice the prescribed dosage. Defendant admitted negligence at the out-set of the trial, but not causation.

Plaintiff presented evidence at trial through two expert witnesses which convinced the jury that taking the medication in the wrong dosage resulted in aggravation of his pre-existing peripheral vascular disease causing him to suffer amputation of his lower leg in February 1997. In its post-trial motion, Walgreen Co. argues that neither of these two experts should have been permitted to testify under the criteria set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The defendant contends that opinions advanced by plaintiff's experts as to the causal connection between plaintiff's taking an admitted overdose of thyroid medicine and the aggravation of his peripheral vascular disease were mere hypothesis or speculation that should not have been submitted to the jury.

This Court notes that prior to the trial defendant also objected to the proposed testimony of these two experts. On July 19, 2002, a *Daubert* hearing was conducted by the undersigned Judge's predecessor on the case. The Court on that date concluded that there was sufficient reliability of the underlying methods of both experts for the proposed testimony (*see* Hearing Transcript, pp. 89–94). The undersigned judge reviewed this ruling at the time of trial and concluded that there was a sufficient basis for the admission of such testimony. Even after defendant's Rule 50 motion based on *Daubert* was denied, its own expert, Dr. Michael McDemott, a professor of medicine and endocrinology specialist, conceded that the conclusions presented by the plaintiffs' experts were plausible explanations of what caused plaintiff's inju-

ries, stating their positions to be "a fine hypothesis" and "fine mechanisms to propose"—although tempered by serious reservations. Based on these circumstances and evidence, the Court DENIES the defendant's motions for judgment as a matter of law, or in the alternative for new trial, for the reasons set forth by Judge Krieger at the *Daubert* hearing and by the undersigned judge at trial.

## DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT

In its motion to alter or amend the judgment, defendant argues that the limitations of damages provisions contained in C.R.S. § 13–64–302 apply to the verdict entered in this case and that the amount of the judgment must be reduced accordingly. Plaintiffs argues that the statute has no applicability to this case.

*Application of Health Care Availability Act, C.R.S. § 13–64–101, et seq.*

■ In 1988, the Colorado Legislature passed this statute in recognition of the increasing costs of malpractice insurance for medical care institutions and licensed health care professionals, and the resultant exodus of professionals from the health care field or certain portions thereof. *See* C.R.S. § 13–64–102. In C.R.S. § 13–64–302, the legislature placed limitations on the liability exposure of those persons and entities covered by the statute. The first part of the statute provides:

> The total amount recoverable for all damages for a course of care for all defendants in any civil action for damages in tort brought against a health care professional, as defined in section 13–64–202, or a health care institution, as defined in section 13–64–202, or as a result of binding arbitration, whether past damages, future damages or a combination of both, shall not exceed one million dollars, present value per patient, including any claim for derivative

noneconomic loss or injury by any other claimant, of which not more than two hundred fifty thousand dollars, present value per patient, including any derivative claim by any other claimant, shall be attributable to noneconomic loss or injury whether past damages, future damages, or a combination of both . . . ."

C.R.S. § 13–64–302(1)(b).

As indicated, the jury returned verdicts for both plaintiffs, awarding damages that exceeded the $1 million cap contained in the statute, as well as the non-economic injury limit of $250,000 [1].

Plaintiffs assert that the statute does not apply in this case as defendant Walgreen Co., is not a "health care professional," as that term is defined in C.R.S. § 13–64–202. The Court states in pertinent part that the statute includes as a health care professional "any person licensed in this state or any other state to practice . . . pharmacy." The term also includes "any professional corporation or other professional entity comprised of such health care providers as permitted by the laws of this state." C.R.S. § 13–64–202(4)(a). Defendant Walgreen Co. in addition asserts that it is a "health care institution" as that term is defined in the statute. The Court notes that the statute defines a health care institution as "any licensed or certified hospital, health care facility, dispensary or other institution for the treatment of the sick or injured." C.R.S. § 13–64–202(3).

The Court agrees with plaintiffs that Walgreen Co. is not a licensed health care professional within the literal language of the statute, as it is neither a licensed person nor a professional corporation or professional entity comprised of licensed persons. Walgreen Co. is a business corporation. The Court disagrees with defendant's argument that Walgreen Co. is a

health care institution within the literal language of the definition, for while it may come within the meaning of a "dispensary" (a term not defined in this statute) it is not a "licensed" or "certified" institution, or at least it has not offered any evidence that it is so licensed or certified.

Nonetheless, despite the fact that Walgreen Co. is not described by the literal definition of either a health care professional or a health care institution, this Court finds that the limitations of the statute should be applied in this case of first impression for the following reasons.

The Court understands that the pharmacists who work at the Walgreen Co. pharmacies are themselves licensed as pharmacists. In the instant case, a pharmacist at the Walgreen store where plaintiff obtained his mis-filled prescription must have filled the prescription, or supervised the person filling the prescription. Even though that pharmacist was not named as a defendant in this case, and the parties here stipulated to the negligence of Walgreen Co. so that detailed evidence of negligence was not presented, this Court believes that it was that individual pharmacist who committed the negligence that led to plaintiff's injury. Had that licensed pharmacist been named as defendant, she or he would have come within the definition of a health care professional and the liability limitation would have applied to that individual. The question remaining is whether the liability limitation can be applied to the employer of that individual under the facts of this case. This exact question appears to be one of first impression that has not been answered by the Colorado courts. However, the opinion of the Colorado Supreme Court in *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d

---

**1.** The statutory limit was raised to $300,000 effective July 1, 2003, but that provision expressly applies only to cases where the act or omission occurred after said date. C.R.S. § (2003).

901 (Colo.1993) provides guidance for this Court and indicates that the limitation should apply here.

In *Scholz*, the evidence demonstrated that a non-licensed lab technician committed negligence by mislabeling biopsy slides resulting in an unnecessary cancer operation on plaintiff. Plaintiff sued the technician, the doctors who made the diagnosis based on the slides, and the employer of the technician, a laboratory that operated as a professional corporation. Before trial, plaintiff dismissed his claims against the doctors and the lab technician, proceeding to verdict only against the laboratory. The jury returned a verdict in excess of $1 million. The trial court reduced the verdict pursuant to the limits of C.R.S. § 13–64–302 and the Colorado Supreme Court affirmed.

The Colorado Supreme Court held that the statutory limits applied to the professional corporation even though the employee who committed the negligence was himself not a licensed person and therefore was not a health care professional under the statutory definition. The Court held that the statutory limits applied to any professional corporation or entity "which is comprised of the licensed health care professionals listed in the statute." 851 P.2d at 904. Although the opinion does not explicitly so state, the Court apparently concluded that the laboratory was comprised of licensed health care individuals. The opinion also pointed out that the parties had stipulated to the liability of the laboratory, as was done in the present case, so there were no findings regarding the negligent cause of the plaintiff's injuries. The Court found that liability may be premised on the so-called "captain of the ship" doctrine. *See* 851 P.2d at 905 n. 5.

The plaintiff in *Scholz* had argued that professional corporations were included in the statute only to prevent an injured plaintiff from avoiding the limitations of the statute by suing an entity, rather than the licensed individual covered by the statute. What is noteworthy for this Court is the Colorado Supreme Court's response that the definition of the statute precludes a plaintiff from avoiding the application of the statute through "artful pleading." *Id.* The Court goes on to state:

> [i]t is safe to assume that the legislature sought to prevent a plaintiff from naming some unlicensed employee whose conduct may have contributed to plaintiff's injuries as a defendant (in addition to the professional entity itself under a theory of *respondeat superior*) and thereby avoid application of the HCAA.

851 P.2d at 904. The Court goes on to explain that it gives broad application to the statute's liability limits in light of the declared purpose of the statute to contain rising malpractice costs. 851 P.2d at 905.

In the instant case, this Court follows the guidance set forth by the Colorado Supreme Court in *Scholz*. Here, although unlike *Scholz* it is the unlicensed entity that has been found liable, the analysis of that case suggests that "artful pleading" should not allow avoidance of the statute. In the instant case, had the (presumably) licensed pharmacist [2] been named, the limitation of liability would have applied to him. Under a theory of *respondeat superior*, this Court would have had to conclude that the employer of the licensed professional is also protected by the limitation of liability. The fact that the licensed employee was omitted from the pleadings in this case should not change this result, any more than the fact that the unlicensed

---

**2.** Plaintiff offered no evidence that the pharmacist here was not licensed. In the Court's view, the burden of demonstrating that the

statutory cap did not apply here fell upon plaintiff.

employee was dropped from the pleadings in the *Scholz* case. The effect is the same; not applying the statutory limit exposes the licensed profession to increased malpractice costs.

This Court recognizes, as stated above, that the Walgreen Co. is not a licensed health care provider, and fully understands that Walgreen Co. has a full range of business as a retail store that has nothing to do with the provision of health care. But in the context of this case, Walgreen's liability arose strictly from its capacity as the employer of a licensed professional who committed a negligent act. Accordingly, this Court must conclude that the limitations of the statute apply here.

*Application of the Statutory Limits to the Judgment*

■ Recognizing that the Court might apply the statutory limits, both plaintiff and defendant have submitted arguments on how the statutory limits would affect the judgment amount previously entered. They agree that the statutory cap for noneconomic loss is $250,000. They disagree on what elements of the damages must be included in that category. Defendant argues that the amount awarded as a separate line item of damages for "physical impairment and disfigurement" must be included in the $250,000 cap. Plaintiff apparently believes otherwise.

This Court, at the time of the submission of the special verdict form to the jury provided a separate line for this element of damages, based in part on the proposed verdict forms submitted by the parties, and in part on the ruling in *Preston v. Dupont*, 35 P.3d 433 (Colo.2001) which held that damages due to physical impairment and disfigurement were not to be included under the noneconomic loss cap

in place at that time. However, defendant has now pointed out, although it did not do so at trial, that in the year 2003, the Colorado Legislature added a definition section to C.R.S. § 13–64–302 which defines "noneconomic loss or injury" and expressly includes within the definition damages due to "physical impairment or disfigurement." C.R.S. § 13–64–302(1)(a)(II)(A). Accordingly, at the time this case was submitted to the jury the noneconomic loss cap of $250,000 under the statute included damages for physical impairment and disfigurement. This Court does not find that this change in the definition of noneconomic loss should be applied only prospectively to cases where the act or omission giving rise to the losses occur after the date of the amendment, for if the legislature had so intended, it would have said so, as it did with the new cap of $300,000 that became effective also in July 2003.

The total amount of damages awarded to the two plaintiffs for noneconomic losses, past and present, including the amount for impairment, totaled $750,000. Since this amount exceeds the cap by $500,000, the amounts awarded for noneconomic losses in each category, past and future, are reduced proportionately to leave a total of $250,000.[3]

By the Court's calculation, the reduction of noneconomic losses to $250,000 results in a revised judgment amount of $691,179 prior to the addition of the pre-judgment interest allowed by C.R.S. § 13–21–101. Plaintiff urges the Court to apply the "good cause" exception contained in C.R.S. § 13–64–302(1)(b), and make a determination of that it is "unfair" to apply the statutory limitations here. This Court

---

**3.** Since the noneconomic damages were awarded to two different plaintiffs and in different amounts for past and future, the Court believes the most equitable form of reduction is to reduce each of the amounts by 2/3, as that is the fraction by which the total awarded exceeds the statutory limit.

does not find that the "good cause" exception necessarily applies to the facts here, and in any event declines to make a good cause finding to not apply the limits.

Because the cause of action in this case accrued on February 15, 1997,[4] and the judgment was not entered until May 19, 2004, the prejudgment interest, accruing as it does at the rate of 9% under C.R.S. § 13–21–101, became a significant component of the total damages entered in the judgment of May 19, 2004. The Court therefore addresses what it perceives to be the impact of the HCAA on the amount of prejudgment interest.

The HCAA provides that the portion of the prejudgment interest that accrues during the time between the date the action accrued, in this case February 15, 1997, and the date of filing, in this case February 10, 1999, ("pre-filing pre-judgment interest") is "deemed to be a part of the damages awarded in the action for the purposes of this section and is included within each of the limitations on liability that are established pursuant to subsection (1) of this section." C.R.S. § 13–64–302(2).

To this Court this limitation means that no pre-filing pre-judgment interest may be added to the noneconomic losses of $250,000 since they are already at the cap, but post-filing pre-judgment interest may be added to those losses without regard to any limitation.

As to all other categories of damages, the pre-filing pre-judgment interest shall be added. If the other categories of damages, together with the pre-filing pre-judgment interest, collectively exceed the amount of $750,000, so that when added to the noneconomic damages of $250,000 the total would exceed the $1 million cap, then the judgment would have to be reduced. The Court here understands from the Clerk's calculation that this is not the case.

To the total damages described above, including the pre-filing pre-judgment interest on those amounts, shall be added post-filing pre-judgment interest, compounded pursuant to C.R.S. § 13–21–101, to each category of damages without regard to any limitation. The Clerk of the Court is directed to prepare an amended judgment in accordance with this Order.

## CONCLUSION

Defendant's Motion for Judgment as Matter of Law, or in the Alternative for New Trial (Dkt. # 111) is DENIED.

Defendant's Motion to Alter or Amend the Judgment (Dkt. # 112) is GRANTED, and the Clerk of the Court is directed to amend the judgment in accordance with this Order.

---

4. This is the date alleged in the complaint on which plaintiff had his leg amputated.